PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

U.S. DISTRICT COURT
FILED
JUN 1 1 2021
CLERK, U.S. DISTRICT COURT
By_____
Deputy

## IN THE UNITED STATES DISTRICT COURT
FOR THE _Fort Worth_ DISTRICT OF TEXAS
_Northern_ DIVISION

_Joe Bond #1155865_
Plaintiff's Name and ID Number
_James V. Allred Unit_
_2101 FM 369 N. Iowa Park, Texas 76367_
Place of Confinement

_Jury Demand_

**4-21CV-736 P**

CASE NO._____
(Clerk will assign the number)

v.

_Brian Collier_
_P.O. Box 99_
_Huntsville Texas 77342_
Defendant's Name and Address
_Kevin L. Schwarts_
_James V. Allred Unit_
_2101 FM 369 N. Iowa Park Texas 76367_
Defendant's Name and Address
_William R. Barry_
_James V. Allred Unit_
_2101 FM 369 N. Iowa Park, Texas 76367_
Defendant's Name and Address
( DO NOT USE "ET AL.")

_Caleb S. Watson_
_James V. Allred Unit_
_2101 FM 369 N. Iowa Park, Texas 76367_

_Amber Morath_
_James V. Allred Unit_
_2101 FM 369 N. Iowa Park. Texas 76367_

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) , the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Rev. 05/15

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1.   In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2.   If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*.   In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3.   The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal  *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee."     *See* 28 U.S.C. § 1915. Thus, the court is required to  assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4.   If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.   PREVIOUS LAWSUITS:

    A.   Have you filed *any* other lawsuit in state or federal court relating to your imprisonment?___YES ✓NO

    B.   If your answer to "A" is "yes", describe each lawsuit in the space below.  (If there is more than one lawsuit, describe  the additional lawsuits on another piece of paper, giving the same information.)

       1.   Approximate date of filing lawsuit: _____ N/A _____

       2.   Parties to previous lawsuit:

          Plaintiff(s) _____ N/A _____

          Defendant(s) _____ N/A _____

       3.   Court: (If federal, name the district; if state, name the county.) N/A  N/A

       4.   Cause number: _____ N/A _____

       5.   Name of judge to whom case was assigned: _____ N/A _____

       6.   Disposition: (Was the case dismissed, appealed, still pending?) _____ N/A _____

       7.   Approximate date of disposition: _____ N/A _____

Rev. 05/15

II.    PLACE OF PRESENT CONFINEMENT: James V. Allred Unit 2101 FM 369 N. Iowa Park. TX 76367

III.    EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?    ✓ YES    ___ NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.    PARTIES TO THIS SUIT:

A. Name and address of plaintiff: Joe Bond #1155865

James V. Allred Unit 2101 FM 369 N.

Iowa Park, Texas 76367

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: Brian Collier P.D. Box 99, Huntsville, Texas 77342

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Director of T.D.C.J.-CID

Defendant #2: Kevin L. Schwarts Capt. of Security

James V. Allred Unit 2101 FM 369 N. Iowa Park Texas 76367

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

Busted head. Broke my arm with use of excessive unnecessary force.

Defendant #3: William R. Barry Lt. of Security

James V. Allred Unit 2101 FM. 369 N. Iowa Park, Texas 76367

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

Busted my head Broke my arm with use of excessive unnecessary force.

Defendant #4: Caleb S. Watson Sgt. of Security

James V. Allred Unit 2101 FM. 369 N. Iowa Park, Texas 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Stole and discarded my Denture/upper Retainer and I.D. Card.

Defendant #5: Amber Morath "LVN" Medical

James V. Allred Unit 2101 FM. 369 N. Iowa Park, Texas 76367

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Denied medical treatment. Dili berate Indifference to cause wanton infliction of pain.

PARTIES To This Suit
CONTINUED

DEFENDANT #6   M. FEAZEL   JAMES V Allred Unit. Asst. Warden
JAMES V. Allred Unit 2101 FM 369 N. Iowa PARK, Tx 76367

ACTS) or OMISSIONS)   WARDEN FEAZEL Had. signature Authority
And gave a False response To Cover up a Constitutional
Violation Comitted by his Co. DEFENDANTS. "Exibit 7 & 8

DEFENDANT #7 KENYON Page. Medical Administrator.
JAMES V. Allred Unit 2101 FM 369 N. Iowa PARK, Tx 76367

ACTS) or OMISSION(S) KENYON Page Gave a false Respons To
Cover up for his medical DEPARTMENT And The sirious
injuries of plaintiff. "Exibit 9 & 10

DEFENDANT #8 OFFICE OF INSPECTOR GENERAL T.D.C.J.
Austin, Texas.

ACTS or Omission(S) Violated Plaintiffs Constitutional
Rights by giving False Response To obtain And Cover
up Asses Use of Force Assault by Refussing To obtain
And View The **Video Footage** That shows Plaintiff was in
fact assaulted by The defendants. Supported by The
Photo's And Medical Records of The plaintiff.
SEE Use of Force Policy Page 37 Thru 38

(3)

V.   STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how <u>each</u> defendant is involved. <u>You need not give any legal arguments or cite any cases or statutes.</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely.   IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

SEE **VIDEO FOOTAGE** IN fRONT of THREE Chow hall on FEBRUARY 24th 2021 My 8th AMENDMENT CONSTITUTIONAL Right To be fREE of CRUEL ANd UNUSUAl PUNISHMENT WAS ViOlATEd WHEN THE USE of EXCESSIVE ANd UNNECESSARY FORCE WAS CONdUCTEd ON ME. I WAS slAMMEd ON THE CONCRETE ANd bEAT Up by CApT. SchiwARTS ANd LT. BARRY I hAd A GEORGE FlOyd TypE KNEE ANd lEg plACEd ON THE bACK of My hEAd ANd NECK iN fRONT of 3 Chow hAll. I COUld NOT idENTIfy OThER OffICERS dUE TO blACKiNG OUT. I SUSTAINEd HEAd iNjURIES. A BROKEN Right ARM NEUROlOgICAL ANd MUSClE dAMAGE.
     Sgt WATSON USEd EXCESSIVE FORCE WHEN hE pUShEd ME Up AGAINST THE WAll KNOCKiNG My dENTURE RETAINER OUT THEN dISCARdING iT AlONg WITh My ID CARd.

VI.   RELIEF:   AMBER MORATH dENiEd ME MEdICAl TREATMENT WITH iNTENT TO CAUSE WANTON iNflICTION of PAIN WHEN ShE SEEN ME IN PHd II CEll bUSTEd Up ANd REfUSEd TO hElp
State briefly exactly what you want the court to do for you.   Make no legal arguments.   Cite no cases or statutes.

COMPENSATORY, PUNITIVE ANd EMOTIONAl dAMAGES
COURT ORdER AGENCY TO MAKE VIdEO FOOTAGE A PART Of STEP 1 & 2 PROCESS

VII.   GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

N/A

B. List all TDCJ-CID identificaiton numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

#517705  #1155865

VIII.   SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?   ____YES   ✓NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.   Court that imposed sanctions (if federal, give the district and division): _____ N/A

2.   Case number: _____ N/A

3.   Approximate date sanctions were imposed: _____ N/A

4.   Have the sanctions been lifted or otherwise satisfied?   ____YES   ____NO

Rev. 05/15

4

STATEMENT OF CLAIM
CONTINUED

Def. #6 WARDEN M. FEAZEL had SIGNATURE AUTHORITY AND GAVE A FALSE RESPONSE. To COVER UP A CONSTITUTIONAL VIOLATION COMITTED by his Co. DEFENDANTS

KENYON PAGE. GAVE A FALSE RESPONSE TO COVER UP FOR his MEDICAL DEPARTMENT AND THE SERIOUS INJURIES of PLAINTIFF, IN doing so VIOLATED PLAINTIFFS CONSTITUTIONAL RIGHT.

OFFICE OF INSPECTOR GENERAL VIOLATED PLAINTIFFS CONSTITUTIONAL RIGHTS by giving FALSE RESPONSE TO OBTAIN AND COVER UP EXCESSIVE USE OF FORCE ASSAULT by REFUSUSSING TO OBTAINE AND VIEW THE **VIDEO FOOTAGE** THAT SHOWS PLAINTIFF WAS IN FACT ASSAULTED by THE DEFENDANTS SUPPORTED by THE PHOTO's AND MEDICAL RECORDS of THE PLAINTIFF.

C. Has any court ever warned or notified you that sanctions could be imposed? ____ YES ✓ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning (if federal, give the district and division): _____ N/A _____

2. Case number: _____ N/A _____

3. Approximate date warning was issued: _____ N/A _____

Executed on: _6/9/21_
          DATE

_JOE BOND_

_Joe Bond_
          (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
4. I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this _9th_ day of _JUNE_, 20 _21_.
          (Day)              (month)              (year)

_JOE BOND_

_Joe Bond_
          (Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

LAW LIBRARY



# *Use of Force Plan*

**APRIL 2017**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## *USE OF FORCE PLAN*
### Table of Contents



BP-03.46, "Standards for the Use of Force"

Foreword ......................................................................................................................................1

Definitions ..................................................................................................................................2

I.    **Required Conditions to Use Force or Restraints** ..............................................................5

    A.    Use of Force ..........................................................................................................5

    B.    Use of Restraints ..................................................................................................6

    C.    Forced Moves ......................................................................................................7

    D.    Use of Chemical Agents ......................................................................................7

    E.    Medically Ordered Restraint to Accomplish Treatment ....................................7

    F.    Collection of Blood Sample or Other Specimen .................................................8

    G.    Offenders Sentenced to Death .............................................................................8

II.    **Equipment** ........................................................................................................................8

    A.    Authorized Equipment .........................................................................................8

    B.    Water Hoses and Fire Extinguishers ..................................................................12

    C.    Storage, Maintenance, Inventory, and Issuance .................................................12

    D.    Use of Protective Equipment ..............................................................................14

III.    **Application of Force and Restraints** ...............................................................................16

    A.    General Guidelines Prior to Implementing Force ..............................................16

    B.    General Guidelines When Implementing Force .................................................17

    C.    Use of Physical Force ..........................................................................................17

    D.    Physical Restraint ................................................................................................18

    E.    Mechanical Restraint ...........................................................................................18

    F.    Use of Stun Cuffs ................................................................................................21

    G.    Use of Chemical Agents ......................................................................................21

    H.    Use of Firearms ...................................................................................................25

    I.    Notification of Screening by Licensed Medical Staff .........................................26

    J.    Forced Moves ......................................................................................................27

    K.    Unique Situations Requiring the Use of Force ...................................................31

IV.   **Reporting** ................................................................................................................**33**
    A.    Initial Reporting ................................................................................33
    B.    Non-Reported Uses of Force ............................................................33

V.   **Documentation** ..........................................................................................................**34**
    A.    Use of Recording Equipment...........................................................34
    B.    Subsequent Uses of Force ................................................................37
    C.    Security Supervisor Responsibility Regarding Reports......................37
    D.    Written Report Deadlines .................................................................37
    E.    Security Supervisor Participants and Witnesses ..............................37
    F.    Recording Information.....................................................................37
    G.    Still Photograph Information ............................................................38
    H.    Report Forms ..................................................................................39

VI.   **Administrative Review** ..............................................................................................**48**
    A.    Chain of Review ..............................................................................48
    B.    Review Process ................................................................................49

**Forms**

UOF-1, Employee Participant Statement

UOF-2, Offender Participant Statement

UOF-3, Witness Statement

UOF-4, Offender Group Refusal

UOF-5, Employee and Offender Use of Force Injury Report

UOF-6, Supervisor Summary

UOF-7, Quality Improvement Review (QIR)

UOF-8, Continuation Page

UOF-9, Employee Use of Force Fact Finding Inquiry

UOF-10, Document Checklist

UOF-11, Administrative Review

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## *USE OF FORCE PLAN*

### FOREWORD

There are occasions within a correctional setting when it becomes necessary for staff to use force in order to achieve the compliance of an offender or to maintain a safe and secure environment for offenders and staff. The Texas Department of Criminal Justice (TDCJ) *Use of Force Plan* is designed to provide guidance in the application of force by TDCJ staff.

In accordance with BP-03.46, "Standards for the Use of Force," the Texas Board of Criminal Justice (TBCJ) directs the TDCJ to establish uniform rules, regulations, and procedures for defining and implementing use of force via the TDCJ *Use of Force Plan*. The TDCJ *Use of Force Plan* is intended to prevent unnecessary or excessive uses of force. It delineates unit and departmental responsibility by providing: definitions of force; preventive and justifiable measures that can be employed prior to and during a use of force; guidance in the implementation of force; and documentation requirements.

The TDCJ is fully committed to abide by and enforce the provisions outlined in the TDCJ *Use of Force Plan*. The Correctional Training and Staff Development (CTSD) Department shall provide curriculum for training employees on use of force procedures. All employees are expected to comply with the requirements of all standards and procedures. Violations shall subject the employee to disciplinary action pursuant to PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees." Additionally, there are constitutional standards to evaluate whether force was applied "maliciously and sadistically for the very purpose of causing harm"[1] to an offender. This means employees are subject to criminal charges and may be held civilly liable in state and federal court.

Except for basic information, data regarding uses of force is usually confidential. Any public information request or records request regarding a use of force shall be referred to the administrative monitor for use of force.

_____
Bryan Collier
Executive Director

---

[1] *Hudson v. McMillian*, 503 U.S. 1 (1992).



# DEFINITIONS

"Aggravated Use of Excessive Force" is conduct indicating a deliberate act, without just cause or provocation, on the part of an employee who:

1.    Uses excessive force;

2.    Conspires with another employee who uses excessive force – conspiracy may include, but is not limited to, the participation in or observation of the use of excessive force or having prior knowledge of an imminent use of excessive force;

3.    Participates in or witnesses a use of excessive force, knows the use of force is aggravated, and fails to report the use of excessive force; or

4.    Witnesses a use of excessive force, does not know the use of excessive force was aggravated at the time the incident occurs, becomes aware the excessive force was aggravated after the incident occurs and fails to report the use of excessive force, or reports the use of excessive force but covers or withholds the fact the excessive force was aggravated.

"Basic Information" is use of force data that is subject to required disclosure and includes: the time and place of the use of force; names of offenders and staff directly involved; a brief narrative of the use of force; a brief description of any injuries sustained; and any civil action, criminal charge, or administrative disciplinary action that may have been filed as a result of the use of force.

"Deadly Force" is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

"Disabled Offender" is an offender with a mental, physical, or developmental disability that substantially impairs the offender's ability to provide adequately for self care or protection.

"Emergency" is an unforeseen event or condition that imminently threatens the safety of individuals or the security of the institution and requires immediate action.

"Excessive Force" is the use of more force than is objectively reasonable to accomplish a lawful purpose.

"First Aid" is minor treatment and observation that does not require subsequent additional treatment, whether provided at the unit or at an outside medical facility. Examples of first aid treatment include, but are not limited to, treatment of first-degree burns, application of bandages, derma bond or steri-strips not in lieu of sutures, removal of foreign bodies not embedded in the eye, use of non-prescription medication, and application of hot or cold compresses. An incident report is not required for incidents involving injuries that require only first aid treatment or in which diagnostic medical testing, such as x-rays, Computerized Axial Tomography (CAT) scans, or Magnetic Resonance Imaging (MRI) resulted in negative findings and the offender or

employee was released without additional treatment, regardless of the method of transportation used to transfer the patient. The administration of a Tetanus shot is considered above first aid. If medical staff determines treatment above first aid is necessary, and the offender refuses, an incident report and Administrative Review are still required.

"Force" is, for the purposes of this plan, strength or energy used to persuade or cause someone to do something.

"Imminent" is likely to occur at any moment.

"Incident Command System (ICS)" means the standard operating procedures employed to establish command in a correctional setting as well as provide a system for the effective management of personnel and resources in response to the incident. See the *Incident Command System for Corrections Operations Manual*.

"Licensed Medical Staff" is a psychiatrist, physician, psychologist, mid-level practitioner, physician's assistant, nurse practitioner, or nurse.

"Non-Provoked Use of Force" is force used in response to an action by an offender if the offender's action did not involve physical assault, attempts at physical harm, an escape attempt, mutiny, rebellion, serious damage to property, or force used in response to an offender's verbal abuse only.

"Offender" is a person in the custody or under the direct supervision of the TDCJ.

"Prone" is lying down, with the front of the body turned toward the supporting surface.

"Provoked Use of Force" is force used in response to an action by an offender such as a physical assault or an attempt to physically harm oneself or another, that is necessary to prevent an escape, regain control of an institution, temporarily isolate or confine an offender, prevent serious damage to property, or gain compliance with a legal order or policy for which some degree of force is required to defuse the situation. Throwing of liquids, spitting, and other such actions may be considered a provoked use of force situation depending on the circumstances. However, verbal abuse in and of itself shall not be considered a provoked use of force situation.

"Quality Improvement Review (QIR) Committee" is a review group that is formed each time there is a medically ordered restraint to accomplish treatment. There is no standing QIR committee. For each medically ordered restraint to accomplish treatment, the unit use of force coordinator notifies the unit health services department and appropriate security supervisor of the need for a QIR. A committee is then formed for that specific review consisting of at least two unit health services staff members and one security staff member, sergeant or above. The unit health services staff must be a medical provider, registered nurse, unit health administrator or practice manager, or qualified mental health professional. The highest ranking unit health services staff member on each QIR committee shall act as chairperson, and at least one unit health services representative must be a provider.



"Recording" is, for purposes of this plan, capturing of video on a camera.

"Resistance" is the act of striving to fend off or offset the actions, effects, or force of an officer, staff member, or restraint device, including, but not limited to, any noncompliance with orders by nonviolent, active, or hostile methods such as sitting down on the run and refusing to stand up to have hand restraints applied, fighting, struggling, or assaultive behavior.

"Serious Injury" is any injury to staff or offenders that requires treatment beyond first aid.  Unit licensed medical staff shall determine the level of treatment required.

"Unnecessary Force" is the use of force when none is required or appropriate.

"Use of Force" is a physically controlling measure taken during a confrontational situation. A use of force may include:

1.    Physical contact by an employee with an offender in order to control movement;

2.    A situation when:

    a.    An offender physically resists the application of restraints;

    b.    Chemical agents are discharged;

    c.    Batons or other instruments make contact with an offender in an effort to restore or preserve order;

    d.    Offensive or defensive physical contact is made, including but not limited to, one or more physical blows, hard pushes, or defensive holds; or

3.    The intentional discharge of authorized firearms at or toward an individual.

"Use of Force Report" is the documented information regarding a use of force that includes applicable report forms, any photographs taken in relation to the use of force, and videotape of the use of force, if applicable.

# PROCEDURES

I.   Required Conditions to Use Force or Restraints

   A.   Use of Force

   One or more of the following conditions must exist before force may be used.

   1.   To obtain compliance when:

      a.   An offender fails to comply with a legitimate order or standing unit procedure;

      b.   Immediate compliance is necessary to preserve the order of the unit or the safety of staff, offenders, other persons, or physical property;

      c.   Verbal intervention is impractical or fails to achieve compliance;

      d.   Standard disciplinary sanctions and procedures alone are insufficient to modify the offender's behavior;

      e.   It is expected the use of force will directly lead to the necessary level of compliance;

      f.   Preventing significant damage to property or enforcing TDCJ policy and procedures in an effort to bring order to the unit;

      g.   Maintaining or regaining control of a unit, or any part thereof in the event of a rebellion, riot, or disturbance; or

      h.   There is imminent danger of bodily injury to staff, offenders, or other persons.

   2.   To prevent escape;

   3.   When authorization for the use of deadly force has been given by the highest ranking security supervisor on duty or designee; and

   4.   During an emergency, where the situation and time do not permit authorization for use of deadly force from the highest ranking security supervisor on duty or designee; and either:

      a.   There is a substantial risk that the offender or person will cause the death or serious bodily injury to the staff member or another if deadly force is not used; or



b. The staff member reasonably believes the use of force to be immediately necessary to prevent an offender's escape from custody.

B. Use of Restraints

1. Physical or mechanical restraint may be used to enforce TDCJ policy and procedures. Restraint shall not be used in a way that is more confining than required by the circumstances, nor used as discipline. Due consideration shall be given to the comfort and welfare of an offender, commensurate with an adequate degree of safety and level of restraint.

2. Use of restraints on pregnant offenders and hearing or visually impaired offenders shall be governed by SM-01.25, "Use of Restraints on Pregnant Offenders and Hearing or Visually Impaired Offenders."

3. Hand restraint straps may be used, at the discretion of the shift supervisor, when the supervisor believes the offender may attempt to aggressively take control of hand restraints and create the possibility of injury to staff.

4. Appropriate Restraint Situations

a. As a precaution against escape during the transfer of offenders outside the compound;

b. To enforce TDCJ policy and procedures in maintaining or regaining control of a unit or any part of it, where lesser means have proven ineffective;

c. When an offender creates a disturbance, including throwing projectiles or destroying property;

d. For medical reasons or for the prevention of self injury at the direction of licensed medical staff See *Correctional Managed Health Care Policy and Procedures Manual*;

e. When escorting administrative segregation, solitary confinement, or death row offenders, in accordance with PO-07.006, "Segregation Officer," PO-07.007, "Solitary Officer," PO-07.121, "Death Row Cellblock Officer (Male Unit)," and PO-07.127, "Death Row Cellblock Officer (Female Unit)";

f. For G5 offenders, in accordance with the *G5 Plan*;



g.  When placing a facial net or mask on an offender, if an offender is spitting; or

h.  As soon as possible when it appears that an offender may become violent or disruptive.

5.  In all other situations, when an offender voluntarily complies with the application of hand restraints and no injuries are sustained that require medical treatment, the procedure shall be considered routine and does not require a Use of Force Report.

C.  Forced Moves

A forced move shall be initiated when an offender refuses a lawful order to:

1.  Submit to a routine cell or body search;

2.  Move from one location to another;

3.  Relinquish a weapon, or an item that may be used as a weapon; or

4.  Provide a blood sample or other specimen for Deoxyribonucleic Acid (DNA) analysis as required by law.

D.  Use of Chemical Agents

If lesser means have proven ineffective, chemical agents may be used to gain compliance from an offender who refuses to obey a lawful order. In the event the use of chemical agents has no effect in controlling a situation, a security supervisor shall determine what steps are necessary, in accordance with this plan, to gain control. Chemical agents shall not be used in the following situations:

1.  On offenders who are incapable of responding to commands and orders being given to them by staff, such as during epileptic seizures or other similar situations; and

2.  On offenders from whom staff is collecting forensic evidence, such as a blood or other specimen, hair sample, or fingerprints, in accordance with AD-03.17, "Offender DNA Specimen Collection" and AD-16.04, "The Office of the Inspector General Policy for Forensic Evidence Collection."

E.  Medically Ordered Restraint to Accomplish Treatment

If an offender refuses medical treatment that licensed medical staff believes is necessary for the safety of the offender, or other persons in close proximity to the offender, restraint shall be used to accomplish the treatment.



F.   Collection of Blood Sample or Other Specimen

    1.   Forensic Evidence Collection

       Due to a criminal investigation, it may become necessary to obtain forensic evidence from an offender, such as a blood sample, hair sample, or fingerprints. A sample is usually obtained through the offender's execution of a Consent to Search Form. However, if an offender refuses to voluntarily cooperate, a search warrant may be obtained from a court of record, ordering the offender to provide the sample. Should use of force become necessary to collect a sample, TDCJ staff shall do so in accordance with AD-16.04, "The Office of the Inspector General Policy for Forensic Evidence Collection" and this plan.

    2.   Texas Department of Public Safety (DPS) DNA Database

       State law requires the collection of blood or other specimens from offenders for the purpose of creating a forensic record based on DNA. If an offender refuses, force is authorized in order to collect a specimen, in accordance with AD-03.17, "Offender DNA Specimen Collection" and this plan.

    3.   Human Immunodeficiency Virus (HIV) Testing

       Force shall not be used to obtain a blood sample for HIV or other blood-borne pathogen testing without a court order.

G.   Offenders Sentenced to Death

    Use of force reporting requirements shall be followed on all offenders under sentence of death until the offender is taken from the holding cell to be escorted to the death chamber for a court ordered execution.

II.   Equipment

A.   Authorized Equipment

    Only equipment authorized by this plan shall be used in use of force situations. The equipment currently authorized for use is as follows:

    1.   Recording Equipment

       a.   Video cameras and recorders

       b.   Cameras to produce still photos



2. Protective Equipment

    a. Riot helmets with face shield attached

    b. Riot shields

    c. Riot batons

    d. Protective masks

    e. Riot, stab resistant, or ballistic protective vests

    f. Shin, elbow, and knee guards

    g. Other protective garments

3. Restraint Equipment

    a. Hand restraints

    b. Cuff protectors

    c. Leg irons

    d. Leg chains or restraining belts

    e. Disposable plastic cuffs

    f. Hand restraint straps

    g. Leg restraint straps

    h. Facial nets or masks

    i. Restraint bags or mitts

    j. Wrist wraps

    k. Soft ties or humane restraints

    l. Psychiatric and mentally impaired restraint equipment, including restraining sheets, tie jackets, rubber or leather belts and cuffs, and straightjackets

m.   Leg braces, leg tubes, and L-clips, which are only authorized for use when transporting offenders. Specific guidelines for use can be found in the TDCJ *Transportation Manual*.

n.   Stun cuffs, which are only used during court escorts and certain medical transports, and shall be authorized by the Correctional Institutions Division (CID) director or designee prior to use.

4.   Obstruction Push Bar

a.   The push bar is used by security staff to move an inanimate object, such as a mattress or property box covering an opening, such as a food tray slot, cell bars, or vent, that is creating a barrier or obstruction between staff and an offender.

b.   The push bar shall only be used when an offender has placed an obstruction in a manner that prevents:

(1)   Staff entry;

(2)   Chemical agent delivery; or

(3)   Implementation of TDCJ policy and procedures.

c.   The push bar shall never be used directly on a person to push them away or to force any other action.

5.   Chemical Agents

a.   Types of Chemical Agents

(1)   OC (Oleoresin Capsicum) - No standard color code

(2)   CS (Orthochlorobenzalmalononitrile) - Color-coded blue

(3)   OC/CS blend formulation

b.   Delivery Systems

(1)   Aerosol

(2)   Launcher - 37mm/40mm gas gun, high pressure air (HPA) used with capsules

(3)   Pepper fog generator

Carry-on-person (COP) canisters, for the administration of OC only, shall not exceed an eight ounce capacity.

6.  Firearms

   a.  .223 rifle

   b.  .308 rifle

   c.  .38 special revolver

   d.  .357 magnum revolver

   e.  .357 sig semi-automatic pistol

   f.  12-gauge shotgun

The executive director or designee may authorize staff to carry a personal firearm and ammunition in emergency response situations if the individual has qualified with the firearm under the supervision of a TDCJ firearms instructor. Documentation shall be maintained in the employee's human resources file. Exceptions may only be authorized by the executive director. Specific firearms guidelines for the Office of the Inspector General (OIG) staff are outlined in the *OIG Policy and Procedures Manual*.

7.  Ammunition

   a.  Lethal

      (1)  .223 caliber

      (2)  .308 caliber

      (3)  .38 caliber

      (4)  .357 caliber

      (5)  .357 sig round

      (6)  12-gauge

   b.  Less than Lethal - Rubber pellets or bean bag

      (1)  12-gauge

(2)    37mm/40mm

(3)    Grenades

(4)    HPA air powered capsule

B.    Water Hoses and Fire Extinguishers

Water hoses and fire extinguishers are not authorized force equipment and shall not be used as such, except in emergency situations. Should contact be made on an offender with these items with the intent of subduing the offender rather than extinguishing a fire, the contact shall be considered a use of force.

C.    Storage, Maintenance, Inventory, and Issuance

1.    In accordance with SM-05.02, "Armory Operations," the warden shall designate areas for the safe and proper storage of use of force equipment. These areas shall be secured and restricted from all offender activity.

2.    Unless authorized by the warden, no firearms or lethal ammunition shall be located or stored inside any TDCJ fenced or walled perimeter. All external building pickets whose function is to maintain vigilance of the unit perimeter shall be equipped with firearms.

The warden shall also designate a specific area for the safe storage of visiting law enforcement officers' weapons, in accordance with AD-02.95, "Storage of Firearms."

3.    The warden shall designate one or more staff to be responsible for the storage, maintenance, inventory, and issuance of use of force equipment in compliance with PO-07.028, "Armory Custodian Officer." This shall include ensuring all equipment is in working condition, readily available, and inventoried as required.

a.    Working Condition - Clean and in good repair

(1)    Pepper fog generators shall be started once every two weeks and test results documented in a log.

(2)    Firearms shall be cleaned at each unit.

(3)    Repairs shall be accomplished only by certified repair personnel authorized by Security Systems.

b.    Ready Availability

(1)    Equipment shall be issued only upon request by a shift supervisor, who may then issue equipment to those security staff whom they supervise. In an emergency, such equipment may be requested by a security staff member of lower rank.

(2)    The following staff shall be equipped with hand restraints: sergeants, lieutenants, captains, and majors; security staff assigned to G4, G5, and administrative segregation housing areas; security staff who routinely supervise offender work or movement; field officers; and transportation officers.

(3)    The following apply to less than lethal equipment, chemical agents, firearms, and ammunition:

(a)    Less than lethal equipment shall only be issued at the direction of the warden or designee; however, in addition,

(b)    The CID or Parole Division director may authorize the warden to identify unit specific staff positions to possess chemical agents dispensed via COP canisters in accordance with SM-05.03, "Management and Utilization of Chemical Agents." Staff assigned to these identified positions shall be trained applicators in order to possess COP chemical agents. Documentation shall be maintained by the unit.

(c)    When chemical agents are authorized:

i.    The issuing employee shall document the type, quantity, and weight of each, if applicable; and

ii.    After completion of the application of the chemical agents, each canister, if applicable, shall be reweighed and usage documented.

(d)    Procedures for routine issuance of firearms for outgoing chain buses are outlined in post orders.

(e)    Transportation officers shall carry only firearms and ammunition authorized by this plan.

    (4)    Designated staff shall maintain a log of all items issued from and returned to the storage area.

c.    Inventoried as Required

    (1)    A daily issuance log of COP chemical agents shall be maintained;

    (2)    A monthly inventory shall be maintained of all use of force equipment;

    (3)    Evidence of use of chemical agents, such as ending weight is less than beginning weight or a spent grenade, that is not supported by a documented use of force, shall be investigated by the major and documented in writing to the warden; and

    (4)    In addition to the above procedures, state operated units shall:

        (a)    Prepare a quarterly inventory report of all use of force equipment and submit to Security Systems;

        (b)    Immediately report lost or damaged use of force equipment to Security Systems, including notification of replacement needs; and

        (c)    Report the loss of chemical agents, weapons, or ammunition to the OIG Investigations Department.

    (5)    Reporting procedures for privately operated units shall be in accordance with contract requirements and as directed by the Private Facility Contract Monitoring/Oversight Division (PFCMOD).

D.    Use of Protective Equipment

1.    Riot Helmet with Face Shield: Serves to protect the head, face, and eyes from blows to the head, thrown objects, or liquids. Should be worn any time security staff is faced with a potentially physical confrontation with an offender.

2.    Riot Shield: Provides maximum frontal protection in confrontational situations.

3. Riot Baton: Primary use is for defense and only then to prevent serious bodily injury to another person or prevent serious property damage. The riot baton can serve as an effective defensive instrument, especially when an attacker attempts to strike the head, groin, rib, or side of the torso. The riot baton shall never be used to punish. Staff members are responsible for their own actions with a riot baton.

   a. If it becomes necessary to strike an offender in self-defense or defense of another, the blow should be to a non-vital area, such as the:

      (1) Clavicle or collarbone;

      (2) Knee, inside or out; or

      (3) Arms, particularly the elbow.

   b. Avoid blows to vital areas, such as the:

      (1) Head;

      (2) Kidney area;

      (3) Liver area; or

      (4) Genital area.

4. Protective Mask: Serves to protect the eyes, nose, and throat in a chemical environment; therefore, shall be worn if time and the situation permit, any time an employee is involved in the deployment of chemical agents.

5. Riot Vest: Provides maximum protection to upper torso against trauma from blunt objects and edged or pointed weapons. The riot vest shall be worn during riots, disturbances, forced moves, or any time a threat of non-ballistic weapons is imminent. The riot vest shall not be used in any ballistic threat situation.

6. Stab Resistant Vest: Provides protection to the upper torso against stab threats.

7. Ballistic Vest: Provides protection to the upper torso against a ballistic threat.

8. Shin, Knee, and Elbow Guards: Provide protection to exposed limbs and joints against trauma and are worn with a riot vest during forced moves, if

available. These items may be worn during riots and disturbances for an additional level of protection.

III.   Application of Force and Restraints

It is the policy of the TDCJ that force shall be used only when necessary and to the extent necessary to gain compliance. Only the minimum amount of force applied in compliance with existing policies and necessary to achieve the desired results shall be employed. The use of force to intimidate, coerce, punish, or for the purpose of revenge is prohibited. The TDCJ does not, however, expect an employee to assume unwarranted risk of imminent bodily injury or death. The following presents a progression of actions to be taken with an offender. Incidents requiring the use of force often evolve quickly and require immediate action. When facing a spontaneous, volatile situation, the immediate response may be to use a higher level of force; however, staff shall provide justification for the force applied.

Occasionally, it becomes necessary to order the use of chemical agents or other use of force equipment. Judgments regarding the use of force and the level to which it is applied should be guided to the fullest extent by the following principles. There may be situations in which additional force is necessary to control an offender whose behavior becomes confrontational again, subsequent to cessation of the first application, and before the use of force is completely terminated.

At units that operate with reduced hours of on-site licensed medical staff, the unit medical director shall maintain and provide the senior warden with a current list of on-call licensed medical staff that includes names and contact instructions for medical staff and a list of offenders who have contraindications for mechanical restraints or the use of chemical agents, known as the Use of Force Contraindications List. The senior warden shall make the lists available to the appropriate security staff for reference when licensed medical staff is not on-site.

A.   General Guidelines Prior to Implementing Force

1.   Every effort shall be made to anticipate and defuse, in advance, situations that might give rise to conflict, confrontation, and violence.

2.   When possible, plan strategy in advance. Provisions shall be considered to document an entire use of force, including efforts by security staff to reason with an offender, using video equipment. When possible, provisions shall be made for the direction of the use of force by a security supervisor not physically involved.

3.   All reasonable actions shall be taken to stabilize the situation. Reasonable actions should include the following whenever possible:

a.   Listening;

TDCHD
LAW LIBRARY

      b.      Attempting to calm or reason with the offender;

      c.      Explaining the consequence of the offender's behavior;

      d.      Notifying the security supervisor;

      e.      Requesting video camera and operator;

      f.      Securing the area where the offender is located;

      g.      Requesting additional security staff;

      h.      Making a visible show of force with staff presence; and

      i.      Implementing the Incident Command System (ICS).

**B.**    General Guidelines When Implementing Force

    1.    All uses of force shall be directed by a security supervisor whenever possible. The security supervisor shall avoid personal involvement in the use of force unless no other course of action is possible.

    2.    Once a use of force ceases, when additional security staff is available and the situation permits, the security supervisor shall replace security staff participants with non-participant security staff.

    3.    If hostility is noted from the offender toward a particular staff member, consideration shall be given to removing that staff member from the area as soon as possible in an effort to de-escalate the situation.

**C.**    Use of Physical Force

    1.    When physical force must be applied, defensive tactics are preferred. These are holds and tactics that prevent blows to the security staff and permit security staff to restrain without striking the offender. Defensive tactics are explained and demonstrated by the Correctional Training and Staff Development (CTSD) Department. Only pressure point or joint manipulation techniques taught by the CTSD Department shall be used.

    2.    Although it may become necessary to place an offender on the floor, care shall be exercised to avoid serious bodily injury to the offender.

    3.    An offender shall cooperate for the purpose of having a photograph taken during intake, for making or updating a TDCJ photo identification card (ID), having fingerprints taken, shaving, or getting a hair cut. If an

offender refuses to cooperate in any of these procedures, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.

4.   If refusing to walk, an offender shall not be dragged except in emergency situations. A hospital gurney or wheelchair may be used to transport the offender, or the offender shall be carried by a sufficient number of security staff, in order to prevent injury to the offender.

5.   If an offender takes control of the cell door food slot, no force shall be attempted until a security supervisor and video camera are present.

6.   If an offender climbs a recreation yard fence, dayroom bars, or other similar fixtures and refuses to come down, extreme caution shall be used in the removal of the offender.

D.   Physical Restraint

In instances where physical restraint becomes necessary, the following shall be considered:

1.   If it becomes necessary to place an offender on the floor, security staff may restrain the offender by placing their hands or upper body, in a non-weight-bearing manner, over the offender's prone body.

2.   Security staff shall not elbow, knee, or sit on the offender, and the offender's legs shall not be crossed or bent towards the buttocks.

3.   Without applying pressure to the neck, the offender's head may be controlled by holding it to one side.

4.   Excessive pressure shall not be applied to the offender's back, chest, or stomach.

5.   The offender shall be placed on the side and into a sitting position as soon as possible.

6.   The security supervisor shall ensure the offender is continuously monitored to identify breathing difficulties, loss of consciousness, or other medical concerns and seek immediate medical treatment if necessary.

E.   Mechanical Restraint

1.   Appropriate restraints shall be applied during a use of force or whenever it appears an offender may become violent or disruptive, unless an offender's

physical condition precludes use of restraints, such as the offender's arm is in a cast or other similar circumstance.

2.     While restrained, an offender shall be checked every 15 minutes and the restraints shall be loosened and retightened periodically, at least once per hour, when practicable. The use of restraints shall be terminated as soon as possible.

3.     Mechanical restraints are temporary restraining devices and provide only limited control. A restrained offender is still potentially dangerous. Security staff shall remember:

     a.     Restraint devices shall be double locked when practicable;

     b.     It is possible for an offender to defeat or to remove these devices; and

     c.     It is possible for the offender to launch a deadly attack even though properly restrained.

4.     Prior to the application of restraints on a psychiatric inpatient or psychological outpatient, where circumstances permit, mental health personnel shall be consulted. Mechanical restraints shall be employed progressively. For example, hand restraints should be used prior to applying leg chains.

5.     In cases of medical emergencies, a physician's directions shall be obtained as early as practicable. Use of mechanical restraints for medical reasons shall be fully documented in the offender's medical record. If the offender resists at any time during the application of restraints, it shall be considered a use of force to accomplish medically ordered treatment and the appropriate use of force reporting shall also be completed.

6.     Offenders shall not be restrained to a stationary or inanimate object, such as a cell bar or fence.

7.     Specific Guidelines for the Use of Hand Restraints and Hand Restraint Strap:

     a.     Hand restraint application is effective in defusing many potentially dangerous situations.

     b.     A hand restraint strap can enable staff to maintain better control of the hand restraints and hand restraint keys during application or removal through a cell door.



(1)     The main functions of hand restraint straps are to protect staff from injury and to maintain appropriate control of the offender.

(2)     Hand restraint straps may be used at the discretion of the shift supervisor when necessary to prevent an offender from attempting to take control of the hand restraints or hand restraint keys, thus possibly causing injury to staff.

(3)     Procedures for use of hand restraint straps

    (a)     Placement and Removal of Hand Restraints

        i.     The strap shall be attached to the hand restraints prior to opening the tray slot or door.

        ii.     One officer shall hold the strap while the other officer places the hand restraints on the offender. The officer holding the strap shall not wrap it around their wrist.

        iii.     The strap is a tool to keep the hands of staff members from being injured if the offender attempts to take control of the hand restraints or hand restraint keys. If the offender pulls the hand restraints into the cell, the officer holding the strap shall maintain tension long enough for the officer applying the restraints to get hands free from the tray slot area.

    (b)     Use During Escorting

        i.     The strap shall be held by the escorting officer in place behind the offender. However, the strap shall not be held tight during normal circumstances. It is considered a normal circumstance when an offender is not resisting.

        ii.     Any resistance, such as pulling on the strap by staff or the offender, shall be deemed a use of force.

        iii.     The offender shall not be lead by the strap.



   iv. Staff shall not pull on the strap if the offender is not resisting.

  c. When an offender physically resists or sustains an injury requiring medical treatment beyond first aid during the application or removal of hand restraints, a Use of Force Report is required.

  d. Injury that does not require medical treatment beyond first aid, such as pinching the skin, does not require a Use of Force Report.

  e. Security staff shall remove hand restraints at the direction of a security supervisor once the offender is calm, in a secured area, and the situation is defused. If the offender requires medical treatment, the licensed medical staff may have the hand restraints temporarily removed only after consulting with a security supervisor. Upon completion of medical treatment, the hand restraints may be replaced, if necessary for security reasons. In cells having a food slot, use of the slot is recommended for the removal of hand restraints.

  f. Once an offender is in a secured area and refuses to relinquish the hand restraints, a minimum of two 15-minute checks on the offender shall be conducted, after which force, including chemical agents, may be used to remove the hand restraints.

F. Use of Stun Cuffs

  1. Stun cuffs shall only be used if authorized by the CID director or designee prior to use.

  2. Procedures for Use

   a. Correctional staff shall check with unit medical staff prior to applying stun cuffs to an offender, to ensure the offender has no medical conditions that may hinder the use of stun cuffs.

   b. Stun cuffs shall be used in accordance with the procedures outlined in SOPM-03.09.

G. Use of Chemical Agents

  1. Required Authorization

   a. Security Staff



(1)     When an offender fails to comply with a lawful order, the security staff member on duty shall attempt to handle the situation. If the offender continues the behavior, the security staff member shall notify the security supervisor.

(2)     Upon arrival, the security supervisor shall take charge of the situation and order the offender to comply. If the offender continues the behavior, the security supervisor shall notify the highest-ranking shift supervisor on duty.

(3)     The highest-ranking shift supervisor on duty shall decide if a chemical agent shall be used to gain compliance.

b.     Medical and Mental Health Staff

(1)     Prior to the use of chemical agents, where circumstances permit, medical and mental health staff shall be consulted, and medical records shall be reviewed to determine if the use of chemical agents would be detrimental to the mental or physical health of the offender involved.

When licensed medical staff is not on-site, the highest-ranking shift supervisor on duty shall refer to the Use of Force Contraindications List and contact the on-call licensed medical staff in an effort to obtain prior medical clearance for use of chemical agents unless an emergency exists and use is necessary to prevent loss of life, significant property damage, or imminent bodily injury to persons.

(2)     Unless necessary to prevent loss of life, significant property damage, or imminent bodily injury to persons, no chemical agents or physical force shall be used against offenders assigned to an area designated as a mental health treatment program until mental health staff has been contacted and attempted to control the situation.

2.     Procedures for Use

a.     The security supervisor shall:

(1)     Determine the chemical agent to be used, based on area size and location, either indoors or outdoors, in accordance with SM-05.03, "Management and Utilization of Chemical Agents";

TDCJ-ID
AW LIBRARY

(2)    Ensure the chemical agent is administered by a trained applicator; and

(3)    Oversee the application of the chemical agent if the urgency of the situation allows.

b.    COP chemical agents shall be used in accordance with the procedures set forth in SM-05.03, "Management and Utilization of Chemical Agents."

c.    Chemical agents used shall be the minimum amount necessary to gain compliance.

d.    Generally, OC is dispersed first; however, if it is ineffective in gaining the offender's compliance, security staff may subsequently disperse CS. An OC and CS blend may also be used to increase the effectiveness if required to gain compliance.

3.    Types of Chemical Agents and the Effects

a.    Oleoresin Capsicum (OC)

(1)    Effects are instant.

(2)    May cause acute burning and closing of eyes, along with inflammation of mucous membranes and upper respiratory system.

b.    Orthochlorbenzalmalononitrile (CS)

(1)    In low concentration, range of effects appears in 20 to 60 seconds.

(2)    May cause tears, sneezing, skin irritations, coughing, irritation of nose and throat, sinus and nasal drip, tightness in chest, difficulty in breathing, and burning and pain in eyes that prevents their opening.

(3)    In higher concentrations, may cause increased nausea, vomiting, vertigo, and complete helplessness and immobility within 60 seconds, requiring assistance in moving from the area.

(4)    Although unlikely outdoors, exposure can be lethal if individual is left in high concentration for a relatively long period of time.

(5)    During the initial recovery period, the individual may be quite alarmed due to the inability to breathe normally. The individual should be encouraged to remain calm and reassured that once recovery starts, it shall occur quickly.

c.    OC/CS Blend Formulation

The OC/CS blend causes a combination of the effects listed above.

4.    Decontamination Procedures

After chemical agents have been used and the situation has been brought under control, individuals and the area affected by the chemical agents shall be decontaminated as soon as possible. All affected individuals shall be examined by licensed medical staff, properly decontaminated or advised as to proper decontamination procedures, and offered a change of clothing. Force shall not be used to decontaminate an offender.

a.    Exposure to OC

(1)    Decontamination of Individual

(a)    Recommended method of decontamination is ventilation.

(b)    Move the affected individual to uncontaminated air, if possible.

(c)    Remove contact lenses and contaminated clothing.

(d)    If contaminated portion of the body is primarily limited to the facial area and there is no ongoing exposure in the cell from residual agent, the offender may flush in-cell by cupping water and splashing it on the face. Otherwise, or if symptoms persist after facial flushing, the offender may be offered a shower or allowed to shower in-cell if possible.

(e)    Do not apply salves, creams, oils, or lotions, which can trap the irritant.

(2)    Decontamination of Area

(a)    Ventilate the affected area and the OC should dissipate within 30 minutes.

       (b)    Launder contaminated necessities.

b.    Exposure to CS

    (1)    Decontamination of Individual

        (a)    Recommended method of decontamination is ventilation and rinsing with lukewarm, soapy water.

        (b)    Move the affected individual to uncontaminated air, preferably facing into the wind, if possible.

        (c)    Remove contact lenses and caution not to rub the eyes. In cases of severe irritation, the individual should irrigate the eyes with water by cupping water and splashing it on the face.

        (d)    If chemical agent residue is found on the individual's clothing, the clothing must be removed to obtain complete relief.

        (e)    Generally, an individual exposed to CS may shower immediately in lukewarm water. When showering, the individual should use soap and avoid harsh rubbing of the affected areas.

    (2)    Decontamination of Area

        (a)    Ventilate the contaminated area.

        (b)    Wash the affected surfaces with soap and water.

c.    Exposure to OC/CS blend

    Decontamination of an individual and of an area for exposure to OC/CS blend is the same as decontamination for CS chemical agents.

H.    Use of Firearms

    Although indiscriminate use of firearms shall not be tolerated, neither shall failure to use them when necessary to meet the primary obligations of the TDCJ. By not using a firearm when necessary and appropriate to prevent an escape or serious bodily injury to another person, staff fails to perform a primary responsibility.

Staff shall never carry a weapon inside the unit unless authorized by the duty warden or above. Personal weapons may be kept on the unit as authorized by BR-151.21, "Weapons Policy."

1. Staff shall discharge a firearm only if reasonable belief exists that such discharge is immediately necessary to prevent the escape of an offender, or to prevent loss of life or imminent serious bodily injury to other persons in the area.

2. Staff shall not discharge a firearm at an offender or individual if the discharge will endanger the lives of others.

I. Notification of Screening by Licensed Medical Staff

1. Licensed medical staff shall be present during a use of force whenever possible.

2. Immediately following a use of force, physical screening of employees and offenders shall be conducted by licensed medical staff, unless:

   a. A delay is justified due to transporting an offender from outside to inside the unit; or

   b. Licensed medical staff is not on-site, in which case the highest-ranking security supervisor on duty shall contact:

      (1) Emergency Medical Services (EMS or 911) in the event of life threatening or limb threatening injuries; or

      (2) For all other injuries, the on-call licensed medical staff shall make a decision, based on the information relayed by the security supervisor, to either:

         (a) Report to the unit to triage and assess the injured;

         (b) Give orders to transport the injured to the nearest local hospital; or

         (c) Delay the physical screening until licensed medical staff returns on-site.

3. If it is impractical to take an offender to the unit infirmary, or if the offender refuses to go, licensed medical staff shall conduct the physical screening where the offender is located.

4.      If an offender refuses to undergo a screening, licensed medical staff shall provide a visual assessment of the offender's condition.

5.      If possible, required photographs or recordings of offender participants and any injuries shall be completed at this stage of the use of force.

6.      Medical screenings of offender participants shall be recorded, but shall not interfere with lifesaving techniques by licensed medical staff. There is no requirement to electronically record a "delayed" physical.

7.      If additional force is necessary to control an offender whose behavior becomes confrontational again, subsequent to cessation of the first application and physical screening and before the use of force is completely terminated, another physical screening shall be conducted, including photographs.

J.      Forced Moves

1.      Required Authorization

a.      When an offender refuses to comply with an order that may trigger a forced move, the security staff member shall attempt to calm the offender and encourage compliance. Examples of these orders include submitting to application of hand restraints; moving out of cell for cell search, new housing, or transport; to stop threatening or attempting to self-inflict injury; to stop attempting to harm another; to stop destroying state property; and other similar orders. If the offender continues to refuse, the security staff member shall notify a security supervisor.

b.      Upon arrival, the security supervisor shall take charge of the situation and order the offender to comply. If the offender continues to refuse, the security supervisor shall notify the highest-ranking shift supervisor on duty.

c.      The highest-ranking shift supervisor on duty shall provide authorization for a forced move.

2.      Preparation for a Forced Move

a.      A security supervisor shall select five, preferably experienced, security staff members. If adequate security staff is available, it is advisable that an officer who has had prior confrontational contact with the offender not be allowed on the team, especially if the offender's actions were hostile or aggressive toward that officer.

b.   The forced move team shall be equipped, at a minimum, as follows:

   (1)   The point man shall have a riot shield, if circumstances necessitate;

   (2)   Each team member shall wear equipment authorized by this plan, including a protective vest, riot helmet with plastic face shield, and other protective padding, if available;

   (3)   One designated team member shall carry hand restraints; and

   (4)   One designated team member shall carry leg irons.

c.   The security supervisor in charge shall notify licensed medical staff of the impending use of force and request they be present, if possible.   Licensed medical staff shall advise of any existing medical problems that preclude the use of force.

   When licensed medical staff is not on-site, the highest ranking shift supervisor on duty shall refer to the Use of Force Contraindications List and contact on-call licensed medical staff to obtain prior medical clearance unless an emergency exists and the use of restraints or chemical agents are necessary to prevent loss of life, significant property damage, or imminent bodily injury to persons.

3.   Procedures

a.   The security supervisor shall assign one officer to record the events with the video camera.   The security supervisor in charge shall record a brief statement on the video camera, including basic information and noting the:

   (1)   Offender's actions that necessitate the forced move and

   (2)   Team members' names, ranks, and assigned number on the team.

b.   The security supervisor and the forced move team shall proceed to the offender's location.   The security supervisor shall explain to the offender on camera:

   (1)   What behavior is expected, for example back up to the bars to have hand restraints applied, kneel for placement of leg restraints, or other similar commands;



(2)    The possible consequences of failure to comply, including the possible use of chemical agents; and

(3)    If the offender refuses to acknowledge or comply, the security supervisor shall repeat the orders a second time.

c.    When possible, the security supervisor shall give a verbal narrative on the videotape describing the events as they are taking place, for example which officer is talking to the offender, who the offender is trying to bite, and other similar information. While doing this, the security supervisor shall stand aside and not obstruct the view of the camera operator.

d.    Forced Move Team Member Assignments

The security supervisor shall oversee the forced move and not become physically involved unless the situation dictates. The forced move team shall perform their respective restraint and release assignments. In the event of unusual or unexpected developments, officers may deviate from their assignments to ensure that maximum control and security is maintained.

(1)    Restraint of Offender

(a)    Officer #1 shall enter the area first with a riot shield and immobilize the offender by pinning the offender against the wall, bed, or floor. Every attempt shall be made to prevent harm to the offender, while keeping the offender from harming anyone else and ensuring control is maintained. Once the offender is physically under control, Officer #1 shall remain to assist the other officers as necessary.

(b)    Officer #2 shall enter the area immediately following Officer #1. Officer #2 shall secure the arm of the offender, the arm containing the weapon, if a weapon is possessed, and place it behind the offender's back. If the offender possesses a weapon, Officer #2 shall retrieve the weapon from the offender once immobilized. Officer #2 shall maintain control of the arm.

(c)    Officer #3 shall carry hand restraints and enter the area immediately following Officer #2. Officer #3 shall secure the other arm of the offender and place

it behind the offender's back, apply the hand restraints to the offender's wrists, and maintain control of the offender's arm. If practicable, the hand restraints shall be double-locked.

(d) Officer #4 shall enter the area immediately following Officer #3. Officer #4 shall secure and maintain control of the leg of the offender.

(e) Officer #5 shall carry leg restraints and enter the area immediately following Officer #4. Officer #5 shall secure the other leg of the offender, apply leg restraints to the offender's ankles and maintain control of the leg. If practicable, the leg irons shall be double-locked.

(f) Forced move team members shall then remove the offender from the area by carrying the offender, allowing the offender to walk, or via a gurney or wheelchair, if necessary.

(g) The security supervisor shall ensure the offender is given a physical screening by licensed medical staff and the appropriate photographs are taken. When practicable, this shall be accomplished prior to the offender's release from the restraints.

(2) Release of Offender

The security supervisor shall instruct the officers to remove the mechanical restraints. Generally, the leg restraints shall be removed first and the offender placed in a secure location. If the offender is placed in a cell with a food slot, the hand restraints may be removed through the opening. Should it become necessary to remove the restraints by force, the forced move team shall perform the following release procedures:

(a) Officer #1 shall place the offender in a cell or some other location in a prone position for restraint removal. If the offender is placed in a cell, the offender's head shall be toward the wall and feet toward the cell door. The offender shall be instructed to remain in the prone position until all restraints have been removed and all officers have exited the area.

(b)     Officer #2 shall maintain control of the offender's right arm.   Officer #3 shall unlock the hand restraints, remove the offender's left wrist from the hand restraint and place the offender's left hand and forearm under the offender's body or behind the back.  Once the left arm is secure, the hand restraint shall be removed from the offender's right wrist and the offender's right hand and forearm shall be placed under the offender's body or behind the back.  The offender shall remain in a prone position.

(c)     Officer #4 shall maintain control of the offender's right leg. Officer #5 shall unlock the leg restraints and remove the restraint from the offender's left leg.  Once the left leg is secured, the restraint shall be removed from the right leg.

(d)     The security supervisor shall instruct the officers to exit the area.  If the offender attempts to get up prior to the forced move team leaving the cell, the team shall restrain the offender again.  When appropriate, officers shall back out of the area, with Officers #4 and #5 leaving first, followed by Officer #3, then Officer #2 and Officer #1.  If in a cell, the door shall be closed immediately.

K.     Unique Situations Requiring the Use of Force

1.     Transporting Offenders

a.     If a use of force is required during transport of offenders, the transport vehicle shall first be taken to the nearest TDCJ unit so the use of force may take place in a secured sally port.   If the immediacy of the situation precludes traveling to the nearest TDCJ unit, another secured sally port, such as that of a local county jail, may be used with the assistance of local law enforcement.

b.     If the use of force takes place at any other location than a TDCJ unit, the driver shall transport the offender to the closest TDCJ unit en route following the use of force.  Staff at the closest unit shall be responsible for medical examination upon arrival of the offender and use of force reporting requirements.

c.     If a use of force occurs while in transit and requires assistance of local law enforcement, the warden of Offender Transportation

shall be contacted if the security staff conducting the transport is assigned to Offender Transportation. The warden or designee of the shipping unit shall be contacted if the security staff is from the departing unit, for further instruction.

d.   If an offender should require immediate medical attention following a use of force while in transit, the driver shall:

   (1)   Contact the highest-ranking shift supervisor on duty at the closest TDCJ unit to determine if licensed medical staff is on-site.

      (a)   If licensed medical staff is on-site, or on-call staff is readily available, transport the offender to that unit; or

      (b)   If no licensed medical staff is available, transport the offender to a non-TDCJ medical facility for treatment.

   (2)   It is not the intent for TDCJ transport officers to attempt a medical assessment of the offender on their own. The urgency of the medical care required should be based on what any reasonable person would believe was indicated by the observations of the offender. Whenever unsure, transport officers should contact TDCJ medical staff or 911 for further guidance.

   (3)   If the offender is required to stay at a non-TDCJ medical facility, ensure security over the offender is established at the medical facility prior to departure. See PO-07.073, "Public Medical Facility Escort Officer"; and

   (4)   In any case, after treatment is completed at a non-TDCJ medical facility, proceed to the closest TDCJ unit, whose staff shall be responsible for use of force reporting requirements.

2.   Medically Ordered Restraint to Accomplish Treatment

   a.   Before medically ordered restraint is applied to accomplish treatment, verbal intervention encouraging the offender to comply with the order shall be attempted by the unit mental health or nursing staff. The mental health or nursing staff shall be recorded while talking with the offender. If verbal intervention by licensed medical staff is unsuccessful, the security supervisor or incident

commander shall give final instructions to the offender and explain the consequences of failure to comply. If the offender still does not comply, medically ordered restraint shall begin.

b.    The Quality Improvement Review (QIR) Committee shall review each situation involving medically ordered restraint to accomplish treatment.

IV.   Reporting

A.   Initial Reporting

When a TDCJ employee observes or participates in a use of force, the employee shall immediately report the use of force to a security supervisor, who shall notify the highest-ranking shift supervisor on duty.   An employee involved in or who is material witness to a use of force incident is required to provide a complete factual account of the employee's actions and observations of the incident.

1.    In accordance with AD-02.15, "Operations of the Emergency Action Center and Reporting Procedures for Serious or Unusual Incidents," certain incidents shall be reported to the TDCJ Emergency Action Center (EAC) by telephone within three hours, and EAC staff shall assign an incident number.  To ensure verification of information, the reporting official shall e-mail a preliminary written report to EAC within three hours following the notification to EAC.  If a serious or unusual incident meets the definition of a use of force, the incident number shall be cross-referenced in the Use of Force Report.

2.    Within 24 hours, the security supervisor or incident commander shall report the use of force electronically and transmit to EAC as well as the OIG Investigations Department, if required.  Procedures regarding the electronic completion of the form and electronic submission are contained in the UF00 Procedures Manual available on the TDCJ Intranet.

3.    The OIG is the primary law enforcement agency for the TDCJ; therefore, any use of deadly force or intentional discharge of a firearm shall be reported immediately to the OIG.

4.    Any use of force against an individual not in TDCJ custody shall be reported immediately to the OIG.  UOF documentation procedures shall not be used in these instances.

B.   Non-Reported Uses of Force

1.    It may be determined that a use of force was not reported but subsequently discovered through an OIG investigation or other means.

LAW LIBRARY

    2.    If the OIG determines use of force did occur, the OIG shall notify the warden and the appropriate review staff.

    3.    Regardless of the date of the use of force, the warden shall take immediate steps to initiate the required reporting procedures.

## V.   Documentation

### A.   Use of Recording Equipment

No product made as the result of a video or still camera shall be altered in any manner.

    1.    Video Cameras

        a.    All shifts shall have trained video camera operators on duty and only trained security staff members shall operate the video camera, except during emergency situations.

        b.    Video cameras shall be requested when an employee expects a confrontational situation, or as soon as possible after an unexpected confrontational situation arises.

        c.    A video camera shall be used to record a use of force whenever the situation permits.

        d.    If possible, only one use of force shall be recorded per videotape.

        e.    The security supervisor or video camera operator shall record a brief statement on the video equipment, including:

            (1)    Date and time, unit, and name and rank of security supervisor;

            (2)    Name and rank of video camera operator;

            (3)    Offender participant's name and TDCJ number; and

            (4)    Location, such as wing, row, cell number.

        f.    The security staff member recording the use of force shall ensure the:

            (1)    Camera has the correct tape ready to record – with lens cap removed from camera as well as tape inserted or rewound;

(2)     Date and time display are correct;

(3)     Lighting is operational;

(4)     Camera is turned on upon arrival on the scene or when a use of force begins; and

(5)     Offender and employee participants are kept in view and recorded at all times to the maximum extent possible. For best coverage of a use of force and identity of participants, keep the camera on wide angle filming.

(6)     The security supervisor shall ensure that a full front and back view of each offender participant is recorded following a use of force and while recording, the supervisor shall:

      (a)     Ask the offender if any injuries were sustained, if none are visible, as a result of the use of force. If the offender does not respond to the question, the offender shall be examined.

      (b)     Provide a UOF-2, Offender Participant Statement to the offender and inform the offender of the opportunity to document what has occurred.

      (c)     No force shall be used to obtain video recording for the purpose of reporting a use of force injury. If an offender refuses to stand or pose for video recording, the recording shall be taken of the offender in the current position and location.

(7)     Strip searches related to a use of force shall be recorded without regard to nudity; however, body cavity searches shall not be recorded. All searches shall be conducted in accordance with AD-03.22, "Offender Searches."

(8)     Recording of the event shall not interfere with lifesaving techniques being administered by licensed medical staff.

(9)     Recording of the use of force shall continue until it is terminated by the security supervisor. The incident is terminated when the offender has been placed in a secure area and the restraints have been removed. If 15-minute checks are used, use of the video camera may be terminated by the security supervisor between the 15-minute checks.

(10)   If the offender is to be transported off of the unit, recording may be terminated once the offender is placed in the transport vehicle and its doors are secured.

(11)   Staff shall state on camera the reason for terminating recording.

2.   Still Photographs

a.   All injuries shall be documented by photographs. Photographs shall be taken in accordance with AD-03.47, "Taking Photographs Following an Injury or Use of Force Incident."

b.   Security staff shall take a minimum of two photographs, full front and back, of each offender participant in a use of force.

(1)   Once licensed medical staff has completed the medical screening, security staff shall take photographs of each offender participant's injuries. This shall be done prior to the bandaging of the injured area, however, shall not interfere with emergency medical treatment by attending licensed medical staff.

(2)   If possible, required photographs shall be taken at the time participants are taken for medical screenings.

(3)   When licensed medical staff is not on-site, photographs shall be taken immediately following the use of force.

(4)   If a use of force involves seven or more offenders who are not injured, videotaping a full front and back view of each offender shall be accomplished in lieu of the still photograph procedure.

c.   In taking photographs, an offender's undergarments shall not be removed unless it is necessary to photograph an injury. All reasonable steps shall be exercised to avoid nude photographs, for example placing a towel in front of offender's private body parts. In the case of female offenders, the breasts shall be covered before photographing unless the injury was to this body area.

d.   No force shall be used to obtain photographs for the purpose of reporting a use of force. If an offender refuses to stand or pose for photographs, the photographs shall be taken of the offender in the current position and location.

e.    If additional force is necessary to control an offender whose behavior becomes confrontational again, subsequent to cessation of the first application and before the use of force is completely terminated, more photographs shall be taken at the time of the subsequent physical screening.

B.    Subsequent Uses of Force

The security supervisor shall ensure a report number and incident number, if applicable, are assigned and entered on all subsequent report documentation. Situations where additional force is necessary to control an offender whose behavior becomes confrontational again, subsequent to cessation of the first application and before the use of force is completely terminated, shall be documented in the original Use of Force Report.

C.    Security Supervisor Responsibility Regarding Reports

It is the security supervisor's responsibility to provide forms to all persons, employees and offenders, required to report a use of force and, upon collection of the forms, ensure each form is complete. If incomplete, the security supervisor shall return it for completion.

D.    Written Report Deadlines

If not typed, Use of Force Reports shall be legibly completed in blue or black ink. The UOF-1, Employee Participant Statement and UOF-3, Witness Statement shall be submitted to the security supervisor as soon as possible following the use of force, or at least prior to the employee's departure from the unit.

E.    Security Supervisor Participants and Witnesses

If the security supervisor was a participant in the use of force or a witness to the application of force, the security supervisor shall complete a UOF-1, Employee Participant Statement or UOF-3, Witness Statement, respectively, in addition to completion of the UOF-6, Supervisor Summary.

If a staff member was not a participant in the initial application of force and only assisted in applying hand restraints or carrying or escorting an offender, the staff member is considered a "witness" for reporting purposes. However, if the offender resists, the replacement staff member then becomes a "participant."

F.    Recording Information

In addition to any formal recording of the use of force, documentation from surveillance video cameras shall be used as part of the Use of Force Report and,

when available, accompany the corresponding Use of Force Report through the review process and be tagged with:

1.    The corresponding Use of Force Report number;

2.    Date and time of the use of force;

3.    Name and TDCJ number of offender or indicate "group"; and

4.    Video camera operator's name and title or rank.

If not on a digital tape, recorded uses of force shall be transferred from the memory storage device to a compact disc (CD) or digital video disc (DVD). The information shall be written on the correct side of the CD or DVD with permanent marker. In no event shall a sticker be placed on the CD or DVD.

G.    Still Photograph Information

1.    Still photographs accompanying Use of Force Reports shall be labeled with:

a.    The corresponding Use of Force Report number;

b.    Date and time photographs are taken;

c.    Offender participant's name and TDCJ number;

d.    Employee participant's name and title or rank; and

e.    Name and rank or title of employee who took the photograph.

2.    If a CD or DVD is used, the information shall be written directly on the correct side of the CD or DVD in permanent marker. In no event shall a sticker be placed on the CD or DVD.

3.    If there is only one offender participant, the offender's full name and TDCJ number shall also be printed on the CD or DVD. If there is more than one offender participant, the offenders' names and TDCJ numbers may be stored on the CD or DVD.

4.    For saving picture files from a memory storage device onto a computer in order to be burned onto a CD or DVD, the following procedures shall be used:

TDCJ-ID
LAW LIBRARY

a.   Offender picture files shall be renamed as a .jpeg digital file with the offender's name and TDCJ number followed by a letter. For example: SmithJohn01234567a and SmithJohn01234567b.

b.   Employee picture files shall be named as a .jpeg digital file with the employee's full name and rank or title followed by a letter. For example: DoeJohnCOVa and DoeJohnCOVb.

c.   The files shall be renamed prior to burning onto a CD or DVD.

5.   Other procedures may be used as specified by the administrative monitor for the use of force as technological advances or equipment become available.

H.   Report Forms

An employee shall not collaborate with another employee or with an offender in order to write a statement, nor shall an offender collaborate with another offender or an employee in order to write a statement. However, if an offender has difficulty completing the form, the offender may seek the aid of fellow offenders or TDCJ employees. The statement shall be voluntary and include only information the offender provides. In addition, employees and offenders shall not use the videotape of a use of force to write statements.

The forms are listed below, if required, and shall include the required copies:

1.   UOF-1, Employee Participant Statement

a.   Each employee who participates in a use of force shall accurately complete a UOF-1, Employee Participant Statement and submit the form to the security supervisor as soon as possible, or at least prior to departure from the unit.

b.   If an employee finds it necessary to use additional force after the cessation of the first application and before the use of force is completely terminated, the employee shall provide justification on the original UOF-1, Employee Participant Statement or UOF-8, Continuation Page describing the force used and the duration of application.

2.   UOF-2, Offender Participant Statement

a.   At the conclusion of the use of force, the security supervisor shall provide the offender a UOF-2, Offender Participant Statement, and read the notice to the offender while being recorded.

IDCJ-ID
LAW LIBRARY

b. If an offender refuses or is unable to complete the form, the security supervisor shall write the reasons why the offender did not complete the form, have two employees who were not participants in the use of force print their name and rank or title on the refusal statement, then sign and date the refusal statement. The UOF-2, Offender Participant Statement shall be included in the Use of Force Report.

c. All offender statements written in any language other than English shall:

(1) Be translated into English on a UOF-8, Continuation Page;

(2) Include the name and rank or title of the certified interpreter translator; and

(3) Accompany the original statement.

3. UOF-3, Witness Statement

a. The UOF-3, Witness Statement is for both employee and offender witnesses.

b. Employee Witnesses

(1) Each employee who witnesses an application of force upon an offender shall complete a UOF-3, Witness Statement. Seeing an offender being escorted during a use of force does not require a UOF-3, unless there is continued physical resistance.

(2) The camera operator shall complete a UOF-3, Witness Statement, including a notation that they were the camera operator.

(3) If a licensed medical staff member witnesses a use of force, the licensed medical staff member shall complete a UOF-3, Witness Statement. Licensed medical staff is not required to complete a UOF-3 if they only conduct the medical screening and do not witness the application of force.

(4) Any other person who the security supervisor has reason to believe may have information that could help explain what transpired shall be required to complete a UOF-3, Witness Statement.

c.    Offender Witnesses

    (1)    Each offender who witnesses an application of force on another offender shall be asked to complete a UOF-3, Witness Statement.

    (2)    If an offender refuses or is unable to complete the UOF-3, Witness Statement, the security supervisor shall:

        (a)    Write the offender's name, number, custody level, and the reason why the offender did not complete the form;

        (b)    Have two employee witnesses print their name and rank or title on the refusal statement; and

        (c)    Sign and date the refusal statement.

    (3)    All offender statements written in any language other than English shall:

        (a)    Be translated into English on a UOF-8, Continuation Page;

        (b)    Include the name and rank or title of the certified interpreter translator; and

        (c)    Accompany the original statement.

    (4)    Offender witness forms shall be completed and submitted within 24 hours following the use of force to the security supervisor of the shift the use of force occurred on and included in the Use of Force Report.

4.    UOF-4, Offender Group Refusal, if applicable

    a.    The UOF-4, Offender Group Refusal shall be used for offenders who refuse to complete a UOF-2, Offender Participant Statement or UOF-3 Form, Witness Statement.

    b.    The form shall include offenders' first and last names, TDCJ numbers, custody levels, and whether the offenders were a participant or a witness.

    c.    Two employees who were not participants in the use of force shall be present. One shall complete and sign the UOF-4, Offender



Group Refusal; and the other shall observe the completion of the form and sign it as a witness.

5.   UOF-5, Employee and Offender Use of Force Injury Report

 a.   Following physical screening, licensed medical staff shall complete a UOF-5, Employee and Offender Use of Force Injury Report on all participants in a use of force.

 b.   Each injury sustained during the use of force shall be fully described by licensed medical staff as well as indicated on the body diagrams provided in the UOF-5, Employee and Offender Use of Force Injury Report.

 c.   The completed UOF-5, Employee and Offender Use of Force Injury Report shall be submitted to the security supervisor of the shift the use of force occurred on before the end of the shift, or at least prior to the security supervisor's departure from the unit, unless:

  (1)   Licensed medical staff was not on-site to conduct the physical screening; or

  (2)   It pertains to an employee who has sought the services of a private physician.  If so, the UOF-5, Employee and Offender Use of Force Injury Report shall be submitted to the appropriate security supervisor within 24 hours following the use of force.

 d.   Upon receipt of the completed UOF-5, Employee and Offender Use of Force Injury Report, the security supervisor shall ensure:

  (1)   All photographs, on either CD or DVD, taken of the employee or offender in conjunction with a use of force, including the required two photographs of an offender, plus those of injured body parts of either the employee or offender, are included in the Use of Force Report.

  (2)   Nude photographs of offenders are not submitted with a Use of Force Report, unless an offender's injury is to a private area and a nude view is the only obtainable photograph.  This must be justified on the UOF-6, Supervisor Summary.

(3)    Photographs of employees are taken in accordance with AD-03.47, "Taking Photographs Following an Injury of Use of Force Incident."

(4)    If injuries were sustained, the unit risk management coordinator signs the UOF-5, Employee and Offender Use of Force Injury Report, acknowledging receipt of a photocopy of the completed form provided by the security supervisor.

e.    Group Disturbances

In the event a unit has a disturbance and seven or more offenders are involved in a use of force, the following reporting procedures shall be used:

(1)    If an offender involved in a group disturbance is not injured during the use of force, the medical screening may be video recorded, including the full length of body, front and back, of the offender, in lieu of individual UOF-5, Employee and Offender Use of Force Injury Reports, provided no photographs have to be taken. Further, there is no requirement to remove an offender's clothing unless it is necessary to photograph an injury. The offender's name and TDCJ number shall be stated on the recording as a screening is performed.

(2)    If an offender involved in a group disturbance is injured during a use of force, an individual UOF-5, Employee and Offender Use of Force Injury Report is required, and photographs shall be taken of the injuries before bandages are applied, if possible.

6.    UOF-6, Supervisor Summary

a.    Upon receipt of the UOF-1, Employee Participant Statements, UOF-2, Offender Participant Statements, UOF-3, Witness Statements, and the recording, the security supervisor shall review all documentation and complete the UOF-6, Supervisor Summary, prior to the end of the shift, or at least prior to departure from the unit.

b.    The security supervisor shall list each employee and offender involved and identify if they were a participant or witness. If no offenders witnessed the use of force, the security supervisor shall provide an explanation on the UOF-6, Supervisor Summary.

c. The security supervisor shall provide detailed information regarding the authorization for, issuance of, and use of chemical agents. This section shall be completed even if chemical agents are issued and returned unused.

d. The security supervisor shall write a summary that gives a clear account of the use of force based upon all employee and offender statements and the incident recording.

e. The security supervisor shall provide the entire Use of Force Report, completed to this point, to the unit use of force coordinator, who shall review the report for completion before forwarding to the:

(1) QIR Committee, if applicable; or

(2) The assistant warden or designee with the rank of major or above.

7. UOF-7, Quality Improvement Review, if applicable

a. As required, the QIR Committee shall review the Use of Force Report, completed up to this point, to ensure the medically ordered restraint required to accomplish treatment is in compliance with existing policy and procedures.

b. After review, the chairperson of the QIR Committee shall be responsible for completion of the UOF-7, Quality Improvement Review.

c. The Use of Force Report shall be returned to the unit use of force coordinator, who shall forward it to the assistant warden or designee.

8. UOF-8, Continuation Page

The UOF-8 shall be used if it is necessary to continue a written statement and insufficient space is available on any of the required forms.

9. UOF-9, Employee Use of Force Fact Finding Inquiry, if applicable

a. The assistant warden or designee shall review all Use of Force Reports forwarded by a security supervisor for possible inappropriate employee actions.

b.   If there appears to be no inappropriate employee actions, the assistant warden or designee shall forward the Use of Force Report to the warden without initiating a UOF-9, Employee Use of Force Fact Finding Inquiry. However, if there is any indication that an employee acted inappropriately, the assistant warden or designee shall initiate a UOF-9 for each applicable employee and conduct a fact finding inquiry, which may include all or part of the following:

   (1)   Interviews of the employee and offender participants;

   (2)   Interviews of employee or offender witnesses; and

   (3)   Reviews of any relevant evidence.

c.   On the UOF-9, Employee Use of Force Fact Finding Inquiry, the assistant warden or designee shall:

   (1)   Describe the evidence relied upon from the attached documentation and any additional information acquired through the fact finding inquiry;

   (2)   State findings as to the employee's actions, noting:

      (a)   Whether one or more use of force violations appear to have occurred;

      (b)   A description of any conduct that indicates the use of force may have been an 'aggravated' use of excessive or unnecessary force in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees"; and

      (c)   Include all alleged violations, such as horseplay, that occurred prior to the incident resulting in the use of force, other conduct that occurred during, or subsequent to, the use of force.

   (3)   Make a recommendation as to what action, if any, should be taken by the warden; and

   (4)   Forward the completed report with all documents and evidence to the warden for final disposition.

      The documentation shall include a PERS 325, Employee Offense and Pre-hearing Investigation Report that has been completed in accordance with PD-22, "General Rules of

Conduct and Disciplinary Action Guidelines for Employees."

d. The warden shall review the Use of Force Report, gather any further information and, after consideration of all information and evidence, shall determine whether to:

(1) Take no action;

(2) Complete a UOF-OIG Referral, Notice of Referral to the Office of the Inspector General, and refer the issue to the appropriate OIG regional manager; or

(3) Initiate an employee hearing, in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

Use of force violations shall be identified and the appropriate charge noted as indicated in PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees." Generally, these violations shall be characterized as use of force violations; however, there may be occasions when another charge is more appropriate, such as when profanity or discourteous language is used on a videotape. In accordance with PD-22, an employee shall be charged with multiple violations for two or more actions when the actions occur within a single incident or at the same time, and each action violates a different rule.

e. If it is determined that an alleged rule violation has occurred, a copy of the UOF-9, Employee Use of Force Fact Finding Inquiry, a copy of the UOF-1, Employee Participant Statement, UOF-3, Witness Statement, and a copy of the PERS 325, Employee Offense and Pre-hearing Investigation Report, shall be provided to the unit human resources representative so that an employee hearing may be scheduled and held in accordance with the procedures within PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

f. An employee may receive a copy of the UOF-1, Employee Participant Statement or UOF-3, Witness Statement, and a copy of the UOF-9, Employee Use of Force Fact Finding Inquiry with the social security number redacted.

g. The final outcome regarding the employee shall be recorded by the warden or reprimanding authority at the bottom of the UOF-9,

Employee Use of Force Fact Finding Inquiry. If discipline was imposed, the warden shall attach a copy of the PERS 185, Reprimand Form.

If these procedures occur after the Use of Force Report has been forwarded for administrative review, a copy of the documentation shall be forwarded to the first level of the review as soon as possible.

10. UOF-OIG Referral, Notice of Referral to the Office of the Inspector General

   a. If it is believed that referral to the OIG is warranted, this form may be completed by the warden or anyone in the administrative review process.

   b. Forward a copy of the form along with a copy of the Use of Force Report to the appropriate OIG regional manager as well as a copy of any recording relevant to the unresolved issues.

   c. The original UOF-OIG Referral, Notice of Referral to the Office of the Inspector General, shall accompany the original Use of Force Report as it is sent through the review process.

   d. The UOF-OIG Referral is ONLY to be used for use of force issues.

11. UOF-10, Document Checklist

   a. The final review of a Use of Force Report at the unit level is by the warden or designee.

   b. The UOF-10, Document Checklist shall serve as a cover sheet for the completed packet known as the Use of Force Report.

   c. By signing the checklist, the warden accepts the responsibility that all documents related to the Use of Force Report are complete and accurate to the best of the warden's knowledge. The report shall be arranged in the following order:

      (1) UOF-10, Document Checklist – On top

      (2) UOF-9, Employee Use of Force Fact Finding Inquiry, and PERS 185, Reprimand Form, if applicable and already completed

(3)    UOF-OIG Referral, Notice of Referral to the Office of the Inspector General, if applicable

(4)    UOF-6, Supervisor Summary

(5)    UOF-1, Employee Participant Statement

(6)    UOF-2, Offender Participant Statement

(7)    UOF-3, Witness Statement – Employees, then offenders

(8)    UOF-5, Employee and Offender Use of Force Injury Report

(9)    Recording of Incident including photos and video

(10)    UOF-4, Offender Group Refusal, if applicable

(11)    UOF-7, Quality Improvement Review, if applicable

(12)    Copy of the I-210, Offender Offense Report, if applicable

(13)    Copy of initial notification email

(14)    Each UOF-8, Continuation Page shall be placed behind the appropriate form

d.    After the warden's review, the unit use of force coordinator shall retain a copy of the report for unit records and forward the original and one copy of the report to the appropriate regional level staff to begin the administrative review process.

## VI.    Administrative Review

During the administrative review process, uses of force shall be expanded as determined necessary, such as the initiation of separate reports if individual uses of force were initially reported as one incident. Individual Use of Force Reports shall remain and not be voided for inclusion in one report.

A.    Chain of Review

Use of Force Reports are reviewed by the following staff:



1. Unit Level Review

    a. Highest ranking shift supervisor ensures the use of force is reported to EAC and the OIG, if required;

    b. Unit use of force coordinator conducts a document review and transmits to the warden; and

    c. The warden conducts a full review, initiating any required action; and forwards the report for regional level review.

2. Regional Level Review

    a. Reports from state operated units shall be forwarded to the appropriate CID regional director's office.

    b. Reports from privately operated facilities shall be forwarded to the director of the PFCMOD or designee.

3. Following completion of the regional level review, all reports shall be forwarded to the administrative monitor for use of force.

4. At any point during the three review processes, the UOF report may be referred to the OIG. The referral shall be made for any situation the reviewer identifies as an excessive use of force or mistreatment of an offender. In addition to any situation the reviewer has identified as such, UOF reports containing the following shall always be referred to the OIG:

    a. The offender has serious injuries;

    b. The offender has injuries noted on the medical screening that are not consistent with the actions taken by staff as noted in the report; or

    c. When reviewing the recording of the UOF, the reviewer notes the offender is not resisting but officers continue to use force.

B. Review Process

The following time frames shall be followed in reporting a use of force and its subsequent review. If information in the report is missing or more information is needed to clarify an issue, a reviewer shall request it and it shall be provided to the reviewer without delay. These procedures are designed to provide a thorough, timely account and review of each use of force.

1. On the day the use of force occurs, the highest-ranking shift supervisor on duty determines whether force was used and transmits the information within 24 hours electronically and appropriate reporting procedures begin.

2. Document Review:   The unit use of force coordinator conducts a document review of the Use of Force Report to ensure it contains all the required forms and all of the required fields are complete, including signatures.

3. Warden Review:   The warden or designee, with the rank of major or above, shall review the Use of Force Report to ensure the use of force was justified, staff actions were in compliance with policy requirements, and the use of force documentation is complete and accurate.   If a policy violation was identified, the warden or major shall ensure the appropriate corrective actions, including employee discipline, are taken.   The warden's or major's review shall be completed and Use of Force Report submitted to the use of force regional coordinator by the 15th calendar day following the use of force.

   a. The original and one copy, including documentation from initial reporting through at least the UOF-6, Supervisory Summary, shall be sent to the use of force regional coordinator.

   b. A copy shall be retained in the unit files.

   c. If a fact finding inquiry or employee reprimand has been, or may be initiated, documentation shall accompany the report or be forwarded to the regional level upon completion.

   d. The report number shall be highlighted on each original report form using a yellow highlighter that does not obscure the highlighted text when photocopied.

   e. If a QIR Committee is required, an additional 15 calendar days is allotted for this review step.

4. Regional Coordinator Review:   The use of force regional coordinator is responsible for conducting a thorough follow-up review of all Use of Force Reports for the respective region to verify that the use of force was justified, staff actions were in compliance with TDCJ policies, any policy violations were addressed with corrective action, including employee discipline, and the use of force documentation is complete.   The regional coordinator's review shall be completed and the Use of Force Report submitted to the administrative monitor within 20 calendar days of the receipt by the regional coordinator.   The original report shall be forwarded

to the administrative monitor and a copy shall be retained in the regional office.

5.    Administrative Monitor Review:  The administrative monitor for use of force is responsible for the final review of all Use of Force Reports to ensure the use of force was justified, staff actions were in compliance with TDCJ policies, any policy violations were addressed with corrective action, including employee discipline, and the use of force documentation is complete.  The administrative monitor's review shall be completed and submitted, if appropriate, to the TDCJ Office of the General Counsel (OGC) within 10 calendar days of the receipt by the administrative monitor. Uses of force that indicate any of the following shall be forwarded to OGC.

(a)    An offender sustained serious injury;

(b)    Off-site evaluation and treatment of offender injuries;

(c)    The offender participant is under sentence of death;

(d)    Employee disciplinary action has been pursued; or

(e)    Any other reports deemed appropriate by the administrative monitor.

After all reviews are completed, the reports shall be retained by the administrative monitor in accordance with the TDCJ *Records Retention Schedule*.

6.    OGC Review: OGC staff, on behalf of the executive director, shall review each use of force report referred by the administrative monitor. The OGC review shall be completed within 15 calendar days of the receipt, and the report shall be returned to the administrative monitor for records retention.

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Participant Statement*

Unit *(Name and Alpha Code):* _____

Report Number: _____     Incident Number (*if applicable*): _____

| I.  INSTRUCTIONS |
|---|

- *Complete Section II.a, through II.e, checking and completing all that apply in each section;*
- *At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:*
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

| II. STATEMENT |
|---|

a. Printed Name: _____     Date/time force was used: _____

b. Location where use of force occurred: _____

c. **PRIOR TO** implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☐ | * Listen to the offender? | _____ |
| ☐ | ☐ | * Attempt to calm or reason with the offender? | _____ |
| ☐ | ☐ | * Explain the consequences? | _____ |
| ☐ | ☐ | Notify the supervisor? | _____ |
| ☐ | ☐ | Request a video camera and operator? | _____ |
| ☐ | ☐ | Secure the area? | _____ |
| ☐ | ☐ | Request additional staff to make a visible show of force? | _____ |
| ☐ | ☐ | Use restraining devices? | _____ |

\* If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.

d. In describing offender behavior, specify which offender(s) and whether it occurred **before** or **during** the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | _____ |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | _____ |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | _____ |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | _____ |
| ☐ | ☐ | Attempted escape | _____ |
| ☐ | ☐ | Attempted suicide or self-mutilation | _____ |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | _____ |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | _____ |
| ☐ | ☐ | Created a disturbance or riot | _____ |
| ☐ | ☐ | Damaged or destroyed state property | _____ |
| ☐ | ☐ | Displayed abnormal behavior | _____ |
| ☐ | ☐ | Obstructed tray slot or cell door | _____ |
| ☐ | ☐ | Pulled away from staff | _____ |
| ☐ | ☐ | Refused to accept a housing assignment | _____ |
| ☐ | ☐ | Refused medically ordered treatment | _____ |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | _____ |
| ☐ | ☐ | Refused strip search or restraint procedures | _____ |
| ☐ | ☐ | Refused to leave or enter a housing area | _____ |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | _____ |
| ☐ | ☐ | Swore at or verbally threatened staff | _____ |

UOF-1 (2017)                     page 1 of 2

Unit *(Name and Alpha Code):*

Report Number: _____    Incident Number *(if applicable):* _____

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

☐   Shoved or pushed offender:

☐   Used restraining holds on: _____

☐   Used restraining device(s) on: _____

**If so, what type & why?**   *Type:* _____   *Reason:* _____

**Date/time used:**   *Date:* _____   *Time:* _____   *Date/time of relief:*   *Date:* _____   *Time:* _____

☐   Struck offender with fist or open hand: _____

**If so, how many times?** _____   *What part of the body was struck?* _____

☐   Kicked offender: _____

**If so, how many times?** _____   *What part of the body was struck?* _____

☐   Used riot baton on: _____

**If so, how many times was the offender struck?** _____   *What part of the body was struck?* _____

☐   Used chemical agents on: _____

**If so, what type?** _____   *How much?* _____

☐   Used deadly force against: _____

**If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?** _____

☐   Other *(Explain):* _____

f.   Written Statement: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

☐ Continuation page(s) attached

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

_____    _____
Printed Name                                              Rank or Title and Social Security No.

_____    _____
Signature                                                    Date

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Offender Participant Statement*

Unit *(Name and Alpha Code):*

Report Number: _____   Incident Number *(if applicable):* _____

### I. NOTICE TO OFFENDER

You were subjected to a use of force by staff. Staff will write statements about what happened. You may also write a statement so that your side of the story is part of the official Use of Force Report. If you do not write it down, the officials reviewing this use of force will not know your version of the use of force. This form is for your statement.

### II. STATEMENT

*Instructions:*
- *Answer the questions below, then write a detailed statement in Section h, telling what happened **before**, **during**, and **after** the use of force occurred.*
- *When you write your statement, be sure to include the name and title or rank of each staff member involved in the use of force against you.*

a.  Your name *(print):* _____   TDCJ#: _____

b.  What date was the force used on you? _____

c.  What happened **before** the use of force that may have caused the officers to use force? *(For example: Did you refuse to obey an order? Did you threaten someone? Were you fighting?)*
_____
_____

d.  Where were you when the force was used on you? _____

e.  What kind of force did staff use on you? *(For example, an employee used chemical agents on you or held, slapped, or hit you)*
_____
_____

f.  If you think staff should not have used force on you, or they used too much force, explain why:
_____
_____

g.  Did the force used on you leave marks on you or cause you injury? *(Answer YES or NO)* _____

If 'YES,' what are the marks or injuries? *(For example: bruises, scrapes, broken bones)*
_____
_____

h.  Written Statement: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

☐ *Continuation page(s) attached*

### III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this offender participant statement is complete and accurate.

_____          _____
Signature                                                    Date

UOF-2 (2017)

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Witness Statement*

Unit *(Name and Alpha Code)*:

Report Number: | Incident Number (*if applicable*):

### I. INSTRUCTIONS

- Complete Section II.a, then at Section II.b, in as much detail as possible, describe what you witnessed <u>before</u>, <u>during</u>, and <u>after</u> the use of force occurred, including:
  - Time or approximate time of use of force;
  - Name of each offender involved;
  - Name and rank or title of each employee involved; and
  - Description of employee and offender injuries, if any.

### II. STATEMENT

a. Date/time force was used: _____    Location where use of force occurred: _____

b. Written Statement: _____

_____

☐ Continuation page(s) attached

### III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

_____    _____
Printed Name                                        Rank or Title or TDCJ # and Custody

_____    _____
Signature                                              Date

UOF-3 (2017)

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Offender Group Refusal*

| Unit *(Name and Alpha Code):* | |
|---|---|
| Report Number: | Incident Number *(if applicable):* |

### I.  INSTRUCTIONS

- *Make an assertive effort to secure participant and witness statements from all offenders who were in the vicinity of the above-referenced use of force.*
- *List below those who declined to submit a statement, starting with participants and then witnesses, as applicable.*

### II.  LIST OF OFFENDERS

| PARTICIPANT | WITNESS | OFFENDER NAME *(Last, First)* | TDCJ NUMBER and CUSTODY |
|---|---|---|---|
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |
| ☐ | ☐ | | |

### III.  ACKNOWLEDGED and  WITNESSED BY

*To the best of my knowledge. the information submitted is complete and accurate.*

➤ Employee completing the UOF-4:

_____    _____
Printed Name/Rank or Title                              Signature/Date

➤ Witnessed by:

_____    _____
Printed Name/Rank or Title                              Signature/Date

UOF-4 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record.  This report is confidential and shall be used for administrative purposes only.*

| Unit *(Name and Alpha Code)*: | |
|---|---|
| Report Number: | Incident Number (*if applicable*): |

## I. EMPLOYEE OR OFFENDER PATIENT

☐ Employee (Printed Name): _____     Rank or Title: _____
☐ Offender (Printed Name): _____     TDCJ No.: _____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury?          ☐ YES     ☐ NO
   If 'YES,' describe: _____
b. Was the employee or offender screened at the unit?          ☐ YES     ☐ NO
   If 'YES,' provide date/time: _____
   If 'NO,' explain: _____
c. Was an injury to the employee or offender present at the time of the screening?     ☐ YES     ☐ NO
   If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force?     ☐ YES     ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): _____

f. I administered the screening (Signature/Date): _____

## III.    MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
   ☐ Offender refused screening
   ☐ Unable to screen because offender was a threat to staff
b. Was the offender ambulatory?          ☐ YES     ☐ NO
c. Was the offender complaining of pain or injury?          ☐ YES     ☐ NO
   If 'YES,' give location on the body where offender indicates pain or injury is present _____
d. Was an injury to the offender visible at the time of the screening?     ☐ YES     ☐ NO
   If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF?     ☐ YES     ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): _____

g. I observed the offender and was unable to complete a full screening (Signature/Date): _____

| Unit *(Name and Alpha Code)*: | |
|---|---|
| Report Number: | Incident Number *(if applicable)*: |
| Patient's Name: _____ | |

## IV. TREATMENT

Complete this section ONLY if employee or offender was observed with injury:

a.  Was the employee or offender treated for injuries?　　☐ YES　　☐ NO

If 'NO,' explain why:　☐ Refused　　☐ Other *(explain)*:

If 'YES,' provide description of treatment: _____

_____

_____

_____

_____ , which occurred at:

☐ Offender's assigned living area　　☐ Hospital *(Name)*: _____

☐ Unit Infirmary　　☐ Other *(Specify)*: _____

b.  Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): _____

c.  I administered, or attempted to administer, the treatment (Signature/Date): _____

## V.  DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description:

_____

_____

_____

_____

(Printed Name/Title)

Brief Description:

_____

_____

_____

(Signature/Date)

## VI.  ACKNOWLEDGEMENTS

a.  I was physically screened or treated by licensed medical staff (Employee Signature/Date): _____
　Licensed medical staff conducting screening or providing treatment (Printed Name): _____

b.  The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): _____
Supervisor (Printed Name/Signature/Date): _____

UOF-5 (2017)　　　　　　　　　　page 2 of 2

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Supervisor Summary*

Unit (*Name and Alpha Code*):

Report Number: _____     Incident Number (*if applicable*): _____

## I.   USE OF FORCE OCCURRED

a.   Use of force was used: _____     _____

b.   Location where use of force occurred: _____

## II.   PARTICIPANTS

a.   Does report information indicate excessive or unnecessary force was used against an offender who is:

|  |  | YES | NO |
|---|---|---|---|
| Under 18 yrs of age? | | ☐ | ☐ |
| Age 65 or older? | | ☐ | ☐ |
| Disabled? | | ☐ | ☐ |

**If 'YES' to any of the above, provide required contact information below:**

Law Enforcement Agency:

| Printed name of person contacted | Agency name | Contact made by | Date |
|---|---|---|---|

Dept. Family & Prot. Svcs.:
➤ 800/252-5400

| Printed name of person contacted | DFPS Call I. D. # | Contact made by | Date |
|---|---|---|---|

b.   Were all employee and offender participants immediately screened by medical staff?   ☐ YES   ☐ NO

If 'NO,' why not? _____

c.   If licensed medical staff was not on site, who contacted the "on-call" medical staff?

| Printed Name | Rank or Title |
|---|---|

Medical Staff Member Contacted:

| Printed Name | Title | Date/Time Contacted |
|---|---|---|

## III.   CHEMICAL AGENTS

a.   Who authorized usage?   Printed Name: _____     Rank or Title: _____

b.   Delivery System and Type of Agent (✓*all that apply*)

| | | | Amount Issued | | Amount Used | |
|---|---|---|---|---|---|---|
| ☐ | **OC** Aerosol [*Carry on Person*] | ➤ | _____ | ounces | _____ | ounces |
| ☐ | **OC** Aerosol | ➤ | _____ | ounces | _____ | ounces |
| ☐ | **CS** Aerosol | ➤ | _____ | ounces | _____ | ounces |
| ☐ | **OC** Launcher | ➤ | _____ | rounds | _____ | rounds |
| ☐ | **CS** Launcher | ➤ | _____ | rounds | _____ | rounds |
| ☐ | **OC** Grenade | ➤ | _____ | how many | _____ | how many |
| ☐ | **CS** Grenade | ➤ | _____ | how many | _____ | how many |
| ☐ | **OC** Pepper Fog Generator | ➤ | — N/A — | | — N/A — | |
| ☐ | **CS** Pepper Fog Generator | ➤ | — N/A — | | — N/A — | |

c.   Was medical staff contacted prior to usage?   ☐ YES   ☐ NO   If 'YES,' who?

| Printed Name | Title |
|---|---|

If medical staff was not on-site, did the offender participant's name(s) appear on the Use of Force Contraindications List?   ☐ YES   ☐ NO

➤ If 'YES,' who contacted the "on-call" medical staff?

| Printed Name | Rank |
|---|---|

Medical Staff Member Contacted:

| Printed Name | Title | Date | Time |
|---|---|---|---|

d.   Was medical staff present during usage?   ☐ YES   ☐ NO   If 'YES,' who? _____

| Printed Name | Title |
|---|---|

e.   Who administered the chemical agent(s)?

| Printed Name | Rank | Trained Applicator? | ☐ YES | ☐ NO |
|---|---|---|---|---|
| Printed Name | Rank | Trained Applicator? | ☐ YES | ☐ NO |

f.   Decontamination:   ➤ Explain how offender was decontaminated: _____

➤ Explain how area was decontaminated: _____

| Unit *(Name and Alpha Code):* | |
|---|---|
| Report Number: | Incident Number (*if applicable*): |

## IV. SUMMARY

*Instructions:* After reading all statements and reviewing videotape footage, explain what happened <u>before</u>, <u>during</u>, and <u>after</u> the use of force; describe efforts made to defuse situation; if there are no offender witnesses, explain why.

 

☐ *Continuation page(s) attached*

## V. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Supervisor (Printed Name/Rank or Title)    Signature/Date

UOF-6 (2017)      page 2 of 2

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Quality Improvement Review (QIR)*

Unit *(Name and Alpha Code):*

Report Number:                                          Incident Number (*if applicable*):

### I. USE OF FORCE OCCURRED

Force was used in the above-referenced incident in order to accomplish medically-ordered treatment involving:

Offender: _____          _____
Printed Name                                                    TDCJ Number

### II. REVIEW RESULTS

The use of force described in this Report was reviewed by the Quality Improvement Review (QIR) Committee on (*date*) _____

and found to be ☐ in or ☐ out of compliance with the *Correctional Managed Heath Care Policy and Procedures Manual* and the TDCJ *Use of Force Plan*.

If not in compliance, explain:

_____

_____

_____

_____

_____

_____

_____

_____

_____

### III.  QIR COMMITTEE

*Instructions:  **The QIR Committee shall be comprised of at least two health services staff and one security staff, sergeant or above.  The highest-ranking health services staff shall chair the committee.***

Printed  Names                                          Rank or Title

Chairperson: _____          _____

Committee Members

_____          _____

_____          _____

_____          _____

_____          _____

### IV.  ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Chairperson: _____          _____
Signature                                                Date

UOF-7 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Quality Improvement Review (QIR)*

Unit *(Name and Alpha Code):*

Report Number:              Incident Number (*if applicable*):

### I. USE OF FORCE OCCURRED

Force was used in the above-referenced incident in order to accomplish medically-ordered treatment involving:

Offender: _____
          Printed Name                        TDCJ Number

### II. REVIEW RESULTS

The use of force described in this Report was reviewed by the Quality Improvement Review (QIR) Committee on (*date*) _____

and found to be ☐ in or ☐ out of compliance with the *Correctional Managed Heath Care Policy and Procedures Manual* and the TDCJ *Use of Force Plan.*

If not in compliance, explain:

_____

_____

_____

_____

_____

_____

_____

_____

_____

### III. QIR COMMITTEE

*Instructions: The QIR Committee shall be comprised of at least two health services staff and one security staff, sergeant or above. The highest-ranking health services staff shall chair the committee.*

            **Printed Names**                             **Rank or Title**

Chairperson: _____       _____

Committee Members

_____       _____

_____       _____

_____       _____

_____       _____

### IV. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Chairperson: _____       _____
          Signature                             Date

| Unit *(Name and Alpha Code):* | |
|---|---|
| Report Number: | Incident Number *(if applicable):* |

## IV. SUMMARY

*Instructions:* After reading all statements and reviewing videotape footage, explain what happened <u>before</u>, <u>during</u>, and <u>after</u> the use of force; describe efforts made to defuse situation; if there are no offender witnesses, explain why.

☐ *Continuation page(s) attached*

## V. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Supervisor (Printed Name/Rank or Title)                    Signature/Date

**UOF-6 (2017)**                                             page 2 of 2

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code):*

Report Number: _____        Incident Number *(if applicable):* _____

**Instructions to Assistant Warden (or designee):**
- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - ➢*New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

**Instructions to Reprimanding Authority:**
- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

### I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|

### II. FACT FINDING INQUIRY

a.   Fact Finding Inquiry began on *(date):* _____   and ended on *(date):* _____

b.   **EMPLOYEE(S)** interviewed *(please print)*:

   Last _____   First _____   MI ____   Rank _____
   Last _____   First _____   MI ____   Rank _____
   Last _____   First _____   MI ____   Rank _____

c.   **OFFENDER(S)** interviewed *(please print)*:

   Last _____   First _____   MI ____   TDCJ# _____   Custody ____
   Last _____   First _____   MI ____   TDCJ# _____   Custody ____

### III. SUMMARY AND FINDINGS

a.   Summary of inquiry: _____

b.   Findings: Based on _____ , it appears the employee's actions were:

   ☐ Appropriate;   ☐ Inappropriate  *(➢ Determined to be 'aggravated'?*  ☐ YES   ☐ NO)*,
   … as evidenced by:   ☐ Alleged violation of departmental rules/regulations   *(Specify:)*
   ☐ Other   *(Specify):* _____

c.   Recommendations:   ☐ No action taken   ☐ Refer to the OIG for investigation   ☐ Employee Hearing pursuant to PD-22
   ☐ Other *(Specify):* _____

d.   Assistant Warden *(or designee)* conducting inquiry: _____

| Printed Name/Rank or Title | Signature/Date |
|---|---|

### IV. FINAL OUTCOME

a.   Evaluation:   I have found the employee's actions were:   ☐ Appropriate  ☐ Inappropriate *(Determined to be 'aggravated'?* ☐ YES ☐ NO) -
   **-or-**
   ☐ I am unable to determine based on evidence presented

b.   Action:   ☐ No action taken   ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)*   ☐ Other *(Specify):* _____

   ☐ Employee Hearing to be scheduled   *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*
   ➢ *Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.*

c.   Reprimanding Authority: _____

| Printed Name/Rank or Title | Signature/Date |
|---|---|

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*:

Report Number:                                          Incident Number *(if applicable)*:

### I.   INFORMATION PROVIDED BY

_____        _____
Printed Employee or Offender Name                               Rank or Title or TDCJ No.

### II.  ADDITIONAL INFORMATION

This is a continuation of information which I began to provide on the *(Enter form number)* Report UOF-_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

☐ *Continuation page(s) attached*

### III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

_____        _____
Signature                                                              Date

### IV.  TRANSLATED BY *(If applicable)*

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender:        _____        _____
                      Printed Name                                            TDCJ No.

Employee Translator:        _____        _____
                      Printed Name                                            Rank or Title

                      _____        _____
                      Signature                                            Date

**UOF-8 (2017)**

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Document Checklist*

| Unit *(Name and Alpha Code):* |
|---|

| Report Number: | Incident Number *(if applicable):* |
|---|---|

### I.  INSTRUCTIONS

*Instructions to Warden:*
- *Review the entire Use of Force Report and ensure all required documentation is included, completed correctly, and submitted by the appropriate person(s);*
- *If any documentation is lacking in any way, take measures to have the responsible person(s) correct it;*
- *Ensure each original form has the UOF Report Number highlighted using a yellow highlighter that does not obscure the highlighted text when photo-copied;*
- *Check the appropriate box and attach the following documents hereunder in the order listed below; and*
- *Provide an explanation for all 'NO' responses.*

### II.  ATTACHMENTS

| YES | NO | DOCUMENT | IF 'NO' EXPLAIN WHY: |
|:---:|:---:|---|---|
| ☐ | ☐ | **UOF-9**, "Employee Use of Force Fact Finding Inquiry" | |
| ☐ | ☐ | **PERS 185**, "Employee Reprimand Form" | |
| ☐ | ☐ | **UOF-OIG Referral**, "Notice of Referral to the Office of the Inspector General" | |
| ☐ | ☐ | **UOF-6**, "Supervisor Summary" | |
| ☐ | ☐ | **UOF-1**, "Employee Participant Statement(s)" | |
| ☐ | ☐ | **UOF-2**, "Offender Participant Statement(s)" | |
| ☐ | ☐ | **UOF-3**, "Witness Statements"      *Employee(s)* | |
| ☐ | ☐ | *Offender(s)* | |
| ☐ | ☐ | **UOF-4**, "Offender Group Refusal" | |
| ☐ | ☐ | **UOF-5**, "Employee and Offender Use of Force Injury Report" | |
| ☐ | ☐ | *CD or DVD with photographs included* | |
| ☐ | ☐ | **UOF-7**, "Quality Improvement Review" | |
| ☐ | ☐ | **I-210**, "Offender Offense Report" *(copy)* | |
| ☐ | ☐ | **Initial email notification** of incident *(copy)* | |
| ☐ | ☐ | **Video recording** | |

**NOTE:  Each UOF-8, "Continuation Page" shall be placed behind the appropriate form.**

*Reviewed by:*

_____        _____
Printed Name                                                        Rank or Title

_____        _____
Signature                                                             Date

**UOF-10 (2017)**

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

**Administrative Review**

| Unit (*Name and Alpha Code*) | OIG # |
|---|---|

Report Number: **M -**_____          EAC Incident Number **I-**_____
(*If applicable*)

_LEVELS OF REVIEW_  *Pursuant to the TDCJ Use of Force Plan, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following.  Based on their review, noteworthy comments and recommendations are provided.*

### I. UNIT COORDINATOR'S REVIEW

a.   Date received: _____     Reported late:     ☐ YES   ☐ NO

b.   Is video viewable?                    ☐ YES   ☐ NO      ☐ NO video

     Is CD or DVD with photographs viewable?    ☐ YES   ☐ NO      ☐ NO CD with photos

c.   Is report complete?        ☐ YES   ☐ NO

     If "NO", what is missing? _____

     _____

     _____

**Compiled by:**

_____        _____
Printed Name/Rank or Title                 Signature/Date Review Completed

### II. UNIT WARDEN'S REVIEW

a.   Were fact-finding inquiries initiated?   ☐ YES   ☐ NO      If Yes, how many?
                                                          _____

b.   Are staff actions consistent with the TDCJ *Use of Force Plan*?   ☐ YES   ☐ NO

c.   Are staff actions consistent with TDCJ Policies and Procedures?   ☐ YES   ☐ NO

     If No, ✓ which applies:     ☐ Procedural violation     and/or     ☐ Possible excessive force

     If No, list violations: _____

d.   Was force justified?          ☐ YES   ☐ NO

e.   Have any employees been disciplined? ☐ YES   ☐ NO    If Yes, how many? _____
     PERS185 included with report?      ☐ YES   ☐ NO    If No, has employee hearing been scheduled? ☐ YES     ☐ NO

f.   Check if report was referred to the OIG at unit level and referral email is included. ☐

g.   Additional comments (*if any*): _____

     _____

     _____

     _____

     _____

     _____

     _____

     _____

**Reviewed by:**

_____        _____
Printed Name/Title                       Signature/Date Review Completed

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Administrative Review*

| Unit (*Name and Alpha Code*) | OIG # |
|---|---|

**Report Number: M -** _____    EAC Incident Number **I-** _____
(*If applicable*)

*LEVELS OF REVIEW* Pursuant to the TDCJ *Use of Force Plan*, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following. Based on their review, noteworthy comments and recommendations are provided.

### III. REGIONAL COORDINATOR'S REVIEW

a.  Date received: _____    Received late from unit?    ☐ YES  ☐ NO

Is report complete?        ☐ YES  ☐ NO

If "NO", what is missing? _____

_____

_____

b.  Are staff actions consistent with the TDCJ *Use of Force Plan*?    ☐ YES  ☐ NO

c.  Are staff actions consistent with TDCJ Policies and Procedures?    ☐ YES  ☐ NO

if No, ✓ which applies:    ☐ Procedural violation    and/or    ☐ Possible excessive force

If No, list violations: _____

If No, were violations identified by unit? ☐ YES  ☐ NO    Addressed by unit?    ☐ YES  ☐ NO

d.  Was force justified?    ☐ YES  ☐ NO

e.  Check if report was referred to the OIG at regional level and referral email is included.    ☐
Has the OIG deferred back to unit?    ☐ YES  ☐ NO

f.  Provide a brief summary as to why force was used: _____

_____

_____

_____

_____

_____

_____

_____

g.  Additional comments (*if any*): _____

_____

_____

_____

_____

_____

_____

Reviewed by: _____

_____    _____
Printed Name/Title    Signature/Date Review Completed

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Use of Force Report

*Administrative Review*

| Unit (*Name and Alpha Code*) | OIG # |
|---|---|

Report Number: **M** - _____     EAC Incident Number **I**- _____
(*If applicable*)

*LEVELS OF REVIEW  Pursuant to the TDCJ Use of Force Plan, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following. Based on their review, noteworthy comments and recommendations are provided.*

### IV.  ADMINISTRATIVE MONITOR'S REVIEW

a.  Date received: _____     Received late from region? ☐ YES  ☐ NO

Is report complete?     ☐ YES   ☐ NO

If "NO", what is missing? _____

_____

b.  Are staff actions consistent with the TDCJ *Use of Force Plan*?     ☐ YES   ☐ NO

If No, were violations identified by unit?     ☐ YES  ☐ NO     Addressed by unit?     ☐ YES  ☐ NO

If No, were violations identified by region? ☐ YES   ☐ NO     Addressed by region?     ☐ YES  ☐ NO

c.  Are staff actions consistent with TDCJ Policies and Procedures?     ☐ YES   ☐ NO

If No, ✓ which applies:     ☐ Procedural violation     and/or     ☐ Possible excessive force

If No, list violations: _____

If No, were violations identified by unit?     ☐ YES  ☐ NO     Addressed by unit?     ☐ YES  ☐ NO

If No, were violations identified by region? ☐ YES   ☐ NO     Addressed by region?     ☐ YES  ☐ NO

d.  Was force justified?     ☐ YES  ☐ NO

e.  Check if report was referred to the OIG at Admin. Monitor level and referral email is included.     ☐

Has the OIG opened investigation? ☐ YES     ☐ NO     Has the OIG deferred back to unit? ☐ YES     ☐ NO

f.  Refer to OGC?     ☐ YES  ☐ NO

g.  Additional comments (*if any*): _____

_____

_____

_____

Reviewed by: _____

Printed Name/Title     Signature/Date Review Completed

### V.  GENERAL COUNSEL

Date Received for Review: _____

Reviewed by: _____

Printed Name/Title     Signature/Date Review Completed

### VI. ADMINISTRATIVE MONITOR'S FINAL REVIEW

Date Report Closed to File: _____

Reviewed by: _____

Printed Name/Title     Signature/Date Review Completed

UOF-11 (2017)                         page 3 of 3



Joe D. Bond.
T.D.C.J - C.I.D. No. 1155865
James V. Allred Unit
2101 F.M. 369 N.
Iowa Park, Texas  76367

7020 1290 0001 1055 1066

Legal Mail !

United States District Court
Office Of The Clerk
Northern District of Texas
501 West Tenth St. Room 310
Fort Worth, Tx 76102

New?