IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JOE BOND, § | | |
| TDCJ No. 1155865, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 7:21-cv-00067-M-BP | |
| § | | |
| BRIAN COLLIER, Executive Director, § | | |
| TDCJ, *et al.*, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Summary Judgment with Brief in Support filed by Lieutenant William Barry, Sergeant Caleb Watson, Captain Carl Schiwart, and Amber Morath ("Defendants") (ECF No. 85) and Plaintiff's Objection to the Motion, Statement of Disputed Facts, and Brief in Support (ECF Nos. 90, 91, 92, respectively). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Barbara M. G. Lynn **GRANT** the Motion in part and **DENY** it in part. She should **ENTER SUMMARY JUDGMENT** in favor of Amber Morath and **DISMISS** Plaintiff's claim against her with prejudice and **DENY** the Motion as to William Barry, Caleb Watson, and Carl Schiwart.

**I.    BACKGROUND**

Joe Bond ("Bond") is an inmate in the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas. ECF No. 1 at 3. Bond brings this suit *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 alleging violations of his constitutional rights. *See generally* ECF No. 1. In addition to his complaint, Bond also filed his answers to the Court's questionnaire on November 1, 2021. ECF No. 24. Bond claims that Barry and Schiwart used excessive force against him by slamming him on the fence, knocking him down to the concrete,

and beating him up. ECF No. 1 at 5. Bond argues that Watson also used excessive force when he pushed him against a wall knocking out his denture retainer and then discarding it. *Id.* Finally, he alleges that Morath was deliberately indifferent to his serious medical needs following the officers' excessive use of force when she denied him medical treatment with intent to cause intentional infliction of pain. *Id.*

Defendants moved for summary judgment on September 30, 2022. ECF No. 85. The Motion asserts that summary judgment is appropriate for all Defendants because they have pleaded qualified immunity, and Bond has not met his burden to overcome their defense. *Id.* at 6-13. The Court ordered Bond to respond to Defendants' Motion by October 7, 2022. ECF No. 86. On October 20, 2022, Bond requested an extension of sixty days to respond to the motion (ECF No. 87), which the Court granted (ECF No. 88), and he filed a response on November 29, 2022. ECF Nos. 90, 91, 92.

## II. LEGAL AUTHORITIES

### A. Summary Judgment

Courts grant summary judgment if "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (cleaned up). The party seeking summary judgment "bears the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which . . . demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'"

*Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

If the movant presents a "properly supported motion for summary judgment, the burden shifts to the nonmovant to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). "The evidence of the non-movant "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nonetheless, the nonmovant may "not rest upon the allegations or denials contained in its pleadings." *Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 383 (5th Cir. 2000).

### B.   Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations omitted). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. ANALYSIS

Defendants assert that they are entitled to qualified immunity from Bond's claims of excessive force and deliberate indifference because Bond has not demonstrated that they violated his constitutional rights, and even if he had, he has not demonstrated that the law clearly establishes the unreasonableness of their actions. ECF No. 85 at 3-6. Because Defendants assert a qualified immunity defense, the burden shifts to Bond to show that the defense does not apply. Review of the summary judgment record shows that there is a genuine issue of material fact regarding Bond's claims against Barry, Watson, and Schiwart. There is no factual dispute as to Bond's claims against Morath, and she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

#### A. There is an issue of fact as to Bond's excessive force claims against Barry, Watson, and Schiwart.

When an official raises a qualified immunity defense and moves for summary judgment, as Defendants did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020).

##### 1. Constitutional Right

A prisoner's claim of excessive force under 42 U.S.C. § 1983 is a claim that the defendant violated the Cruel and Unusual Punishments Clause of the Eighth Amendment to the

Constitution. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). When a prisoner accuses prison officials of using excessive physical force in a manner that violates the Eighth Amendment, the core question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. To determine whether a prison official acted maliciously to cause an unnecessary and wanton infliction of pain, courts must consider five factors: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). Consideration of all five factors is not necessary, and each case should be judged on its own facts. *Baldwin v. Stalder,* 137 F.3d 836, 838-39 (5th Cir. 1998). However, a court errs if it does not consider any of the factors or if it does not consider factors for which there is relevant evidence. *Id.*

### a. The Extent of the Injury Suffered

To support an excessive force claim, the plaintiff must demonstrate that he sustained more than a *de minimis* physical injury, but "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). Not "every malevolent touch by a prison guard gives rise to a federal cause of action, and *de minimis* uses of physical force can only support an excessive force claim if it was of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Bond contends that he sustained head injuries, a broken arm, and neurological and muscle damage because of the officers' use of force. ECF No. 1 at 5. The medical records confirm that Bond did sustain a fracture in his right arm. ECF No. 6 at 6. Defendants acknowledge Bond's injuries, but allege that they are consistent with the appropriate use of force. ECF No. 85 at 7. The first *Hudson* factor therefore weighs in favor of Bond.

5

### b.     The Need for Application of Force

Bond argues that the force used exceeded what was necessary under the circumstances. In his answers to the Court's questionnaire, he states that he was leaving the chow hall, when for no reason, Schiwart ran up to him screaming and telling him to catch the wall. ECF No. 24 at 2. As he started to obey the orders, Schiwart and Barry grabbed him, threw him against the fence, and then to the ground. *Id*. Bond contends that he committed no disciplinary violation and was assaulted for no reason. *Id.*

Bond's allegations contradict the description of the events in Defendants' Motion. *See* ECF No. 85 at 6-10. Barry, Watson, and Schiwart provided evidence that Bond verbally threatened staff and attempted to assault Schiwart by swinging at him with a closed fist, presenting the need for the officers' responsive, physical conduct. *Id.* The officers further presented evidence that because Bond continued to refuse their orders, was verbally aggressive and threatening, and attempted to assault officers, there was a clear need for the application of force. *Id.* Bond repeatedly refers to the TDCJ Surveillance Video recording of the incident in support of his response, but no party has offered the video as summary judgment evidence. ECF Nos. 1 at 5; 24 at 2, 9, 11. The record shows conflicting versions of the events leading up to the incident at issue, and there is a clear factual dispute as to whether force was needed, and if so, what level was necessary to restore order and discipline. Because the Court views the evidence in the light most favorable to the nonmovant, there is a fact issue on the second *Hudson* factor, which must weigh in Bond's favor.

### c.     Relationship Between the Need and the Amount of Force Used

As stated above, the summary judgment evidence of Bond's post-incident medical examination raises a fact issue that he was injured because of the officers' use of force. Bond sustained more than a *de minimis* injury, and his version of events supports a conclusion that the force applied was unreasonable. *See* ECF Nos. 1 and 24; *Whitley*, 475 U.S. at 321 (citations

6

omitted) (courts may look at seriousness of injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occurred."). There are fact issues here on whether any force was necessary and, if so, whether the amount the officers applied was excessive. Weighing the evidence in the light most favorable to the nonmovant, the third *Hudson* factor also leans in Bond's favor.

### d. The Threat Reasonably Perceived by the Responsible Officials

Bond alleges that he did not provoke the officers' use of force. ECF No. 24 at 2. Barry, Watson, and Schiwart provide in their incident reports that Bond refused Schiwart's orders and both verbally and physically threatened Schiwart. ECF No. 85 at 9-10. Bond states in his verified complaint and answers to the Court's questionnaire that his assault was unprovoked and was not in response to any resistance. ECF Nos. 1 at 4; 24 at 2. Moreover, he makes the same claims in his grievance reports filed with the TDCJ. ECF Nos. 85-1 at 29; 85-2 at 3.

According to evidence presented by Barry, Watson, and Schiwart, Bond's actions justified the officers' belief that Bond was a threat to himself, the staff, and the safety and security of the prison. *Id.* Consequently, they believed in good faith that force was necessary to regain control of the situation. *Id*. Barry, Watson, and Schiwart have offered evidence that Bond was being verbally aggressive and that Schiwart attempted to deescalate the situation first through verbal intervention. *See e.g.,* ECF No. 85-1 at 10-11, 12-13, 16. After verbal intervention failed and Bond threatened staff, Schiwart ordered him to face the fence. *Id.* Bond refused to comply and continued with his verbal aggression. *Id.* Schiwart then reached for Bond's arms to apply hand restraints, and Bond attempted to assault Schiwart by swinging at him with a closed fist. *Id.* In response, Schiwart forced him to the ground and with Barry's help, secured Bond's legs to the ground as he continued

7

to attempt to assault the staff and resist the restraints. *Id.* The summary judgment evidence in the Use of Force Report supports this description of events. *See* ECF No. 85-1 at 4, 9, 11, 13, 28.

In response, Bond again refers to the video footage that no party has offered in evidence. ECF No. 32-1. Nevertheless, Bond has presented evidence supporting his version of the incident in his verified complaint and questionnaire responses. Again, because the law requires the Court to view the evidence in the light most favorable to the nonmovant, the fourth *Hudson* factor weighs in Bond's favor.

### e. The Efforts Made to Temper the Severity of a Forceful Response

Just as both sides present different explanations of what instigated the officers' actions, there are opposing accounts of what the officers did, if anything, to temper their response to Bond's alleged actions. There is a factual dispute over whether the officers' efforts were only what was necessary to control the situation. Accordingly, this factor is neutral as to both parties, but must again weigh in Bond's favor.

The Court can rely on a plaintiff's verified complaint and questionnaire responses to determine if there is enough evidence creating a fact issue to defeat a motion for summary judgment. *See Hart v. Hairston*, 343 F. 3d 762, 764 (5th Cir. 2003) (plaintiff's grievances in his complaint was competent summary judgment evidence because the complaint was filed under the penalty of perjury). Bond verified under penalty of perjury both his complaint and responses to the Court's questionnaire. ECF Nos. 1 at 7; 24 at 13. Applying the *Hudson* factors to the summary judgment evidence, the undersigned concludes that there is a fact issue as to whether Bond provoked the physical encounter at issue and whether Barry, Watson, and Schiwart acted excessively with the intent to cause harm in violation of Bond's constitutional right to be free from cruel and unusual punishment.

## 2. Clearly Established Law

In considering whether Barry, Watson, and Schiwart violated Bond's constitutional right to be free of excessive force, the Court considers the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A right is clearly established when its contours are sufficiently clear that a reasonable official would know that what he was doing violated that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requirement does not mean that there must be a prior case with identical facts. "The central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.2d 337, 350 (5th Cir. 2004) (en banc). Further, the law should be "clear in a more particularized rather than abstract sense such that it is apparent that the official's actions are unlawful based upon pre-existing law." *Anderson*, 483 U.S. at 640.

The law regarding violation of the Eighth Amendment's excessive force prohibition was clearly established at the time of Bond's encounter with Barry, Watson, and Schiwart. The Court refers to the *Hudson* factors to determine whether the officers applied force applied in good faith to maintain or restore discipline, or "maliciously and sadistically to cause harm.*" Baldwin,* 137 F.3d at 839. In the absence of controlling video or other evidence proving the opposite, Bond's sworn statements that the attack on him was unprovoked provide enough evidence to create a fact issue as to the violation of a clearly established right. Therefore, Judge Lynn should deny the Motion as to Bond's claim of excessive force against Barry, Watson, and Schiwart.

### B.     Morath has qualified immunity from Bond's deliberate indifference claim and is entitled to summary judgment.

The law regarding violation of the Eighth Amendment's proscription of cruel and unusual punishment in the provision of medical care was clearly established at the time of Bond's injuries in this case. The law requires the government to provide medical care for incarcerated persons. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Further, the Fourteenth Amendment guarantees arrestees the right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, among others, *Estelle,* 429 U.S. at 103. "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "To succeed on a deliberate indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino*, 239 F.3d at 755). Under this subjective recklessness test, a prison official acts with deliberate indifference only "if she knows that the inmate faces a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *See Gobert,* 463 F.3d at 346.

The Fifth Circuit consistently has held that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (citing *Hare v. City of Corinth*, 74 F.3d 633, 645) (*Hare II)*; *see also, e.g.*, *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018); *Gobert,* 463 F.3d at 346

(explaining that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference") (citations omitted). Thus, "an official's failure to alleviate a significant risk that [s]he should have perceived but did not" cannot amount to deliberate indifference. *Farmer*, 511 U.S. at 838. The burden is on the plaintiff to overcome the qualified immunity defense. *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

Bond asserts that Morath was deliberately indifferent to his medical needs when she did not help him on her evening pill rounds when he asked for help and instead only uttered "its [sic] always something with you." ECF No. 24 at 6. Further, he asserts that he did not see a medical provider for four days after his arm was broken. *Id.* Morath offered evidence that it was not her responsibility to determine when a provider sees an inmate. ECF No. 85-2 at 10. She also showed that the referral of Bond to a medical provider already had been made before she interacted with him at his cell during her evening pill rounds. *Id.* Bond received pain medicine and saw a medical provider within the time limit set in TDCJ policy. ECF No. 85-2 at 8. Bond does not provide any summary judgment evidence supporting his argument that because of their conversation during pill rounds Morath was aware of an excessive risk of harm to him or that she knowingly disregarded that risk. Bond has not met his burden to produce sufficient evidence that Morath violated his constitutional rights. *See Anderson,* 477 U.S. at 249. Consequently, no genuine issue of material fact exists on Bond's Eighth Amendment claim against Morath, and she is entitled to judgment as a matter of law on her qualified immunity defense.

### IV.   CONCLUSION

Genuine issues of material fact exist regarding Bond's claims that Barry, Watson, and Schiwart used excessive force against him in violation of the Eighth Amendment. No such issues exist as to his claim against Morath. Accordingly, the undersigned **RECOMMENDS** that United States District Judge Barbara M. G. Lynn **GRANT** the Motion in part, **ENTER SUMMARY**

11

**JUDGMENT** in favor of Amber Morath, and **DISMISS** Bond's claim against her with prejudice. Judge Lynn should **DENY** the Motion in part as to William Barry, Caleb Watson, and Carl Schiwart.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on December 22, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE